# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

INNOVATION VENTURES v LIQUID MANUFACTURING

Docket No. 150591. Argued March 9, 2016 (Calendar No. 1). Decided July 14, 2016.

Plaintiff Innovation Ventures, LLC, filed an action in the Oakland Circuit Court against defendants Liquid Manufacturing, LLC; K & L Development, LLC; LXR Biotech, LLC; Eternal Energy, LLC; Andrew Krause; and Peter Paisley. Krause was the managing member of K & L Development. Paisley was the president and CEO of Liquid Manufacturing. Krause and Paisley together founded LXR Biotech and Eternal Energy. In 2007, Innovation Ventures contracted with Krause and K & L Development to design, manufacture, and install equipment to produce and package 5-hour ENERGY at Liquid Manufacturing's bottling plant, and Innovation Ventures contracted with Liquid Manufacturing to house and operate the equipment designed and installed by K & L Development. In 2009, Innovation Ventures and K & L Development reduced their oral agreement to writing (Equipment Manufacturing and Installation Agreement or EMI) and entered into a Nondisclosure and Confidentiality Agreement (Nondisclosure Agreement). Innovation Ventures terminated the EMI in 2010, shortly after it was reduced to writing, and K & L Development ceased business operations sometime in 2010. Also in 2010, Innovation Ventures terminated the manufacturing agreement with Liquid Manufacturing, and Innovation Ventures purchased the equipment Liquid Manufacturing used to produce and package 5-hour ENERGY. In 2011, Innovation Ventures and Liquid Manufacturing memorialized the termination and equipment purchase in a Termination Agreement, which included nondisclosure and noncompete provisions and expressly granted permission to Liquid Manufacturing to manufacture 36 products using the equipment. According to the Termination Agreement, Liquid Manufacturing was obligated to obtain a nondisclosure agreement from each company associated with the production of any of those 36 products. The nondisclosure provision of the Termination Agreement prohibited any of the companies associated with the 36 permitted products from disclosing that its product was bottled using the same equipment as was Innovation Ventures' products. Krause and Paisley sought and received Innovation Ventures' permission to add Eternal Energy to the list of products Liquid Manufacturing could produce using the equipment. From that time until it repurchased the equipment in 2011, Liquid Manufacturing used Innovation Ventures' equipment to bottle Eternal Energy. In 2012, Innovation Ventures informed Liquid Manufacturing that Liquid Manufacturing had breached the Termination Agreement by producing Eternal Energy and by failing to provide Innovation Ventures with a nondisclosure agreement from Eternal Energy. On the same day it informed Liquid Manufacturing of the breach, Innovation Ventures filed its complaint against defendants, alleging that Liquid Manufacturing, K & L Development, Paisley, and Krause wrongfully shared

and used confidential information obtained from Innovation Ventures, and that those defendants violated the noncompete agreements by manufacturing, marketing, and distributing Eternal Energy and other energy drinks. Defendants moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). The trial court, Phyllis C. McMillen, J., ultimately granted defendants' motions for summary disposition. The trial court concluded that there was no genuine issue of material fact on the question whether K & L Development and Krause had breached their contract with Innovation Ventures. The court also held that the Nondisclosure Agreement between Innovation Ventures and K & L Development failed for lack of consideration. Alternatively, the court held that the noncompete provision in the Nondisclosure Agreement was unreasonable, and therefore, unenforceable. According to the court, the noncompete provision in the Termination Agreement was also an unreasonable restraint of trade because its purpose was to prevent competition, not to protect a legitimate business interest. The court further held that there was no genuine issue of material fact on the question whether Liquid Manufacturing breached the Termination Agreement because Innovation Ventures gave Liquid Manufacturing permission to produce Eternal Energy. The court held that Liquid Manufacturing did not breach the confidentiality provisions of the Termination Agreement because Liquid Manufacturing had permission to produce 36 different products. In addition, the court concluded that Liquid Manufacturing did not breach the confidentiality provisions of the Termination Agreement because Innovation Ventures failed to take any precautions to prevent Krause and K & L Development from disclosing their knowledge about the bottling equipment housed in Liquid Manufacturing's facilities. Innovation Ventures appealed in the Court of Appeals. The Court, STEPHENS, P.J., and TALBOT and BECKERING, JJ., affirmed the trial court's grant of summary disposition to defendants on all claims. *Innovation Ventures, LLC v Liquid Manufacturing, LLC*, unpublished opinion per curiam of the Court of Appeals, issued October 23, 2014 (Docket No. 315519). The Supreme Court granted Innovation Ventures' application for leave to appeal to consider two questions: (1) whether the Nondisclosure Agreement and the EMI are void due to failure of consideration, and (2) whether the noncompete provisions in the Termination Agreement and the Nondisclosure Agreement are reasonable, and thus, enforceable. 498 Mich 859 (2015).

In a unanimous opinion by Justice MCCORMACK, the Supreme Court *held*:

The EMI and the Nondisclosure Agreement between Innovation Ventures and K & L Development, and Innovation Ventures and Krause, were not void for failure of consideration because the parties exercised their rights as clearly contemplated by the EMI, and the parties had substantially performed their obligations under the contract. Commercial noncompete agreements should be reviewed under the rule of reason with attention to federal cases interpreting the rule; the analysis of noncompete agreements between an employer and an employee does not apply to noncompete agreements between businesses.

1. The Court of Appeals erred by determining that the EMI and the Nondisclosure Agreement were unenforceable because of a failure of consideration. The EMI and the Nondisclosure Agreement between Innovation Ventures and Krause, and Innovation Ventures and K & L Development, were not void for failure of consideration. Failure of consideration is an affirmative defense in cases when a party's performance under a contract is so seriously deficient that the contract is rendered worthless or the inducement ceases to exist. Contracts may

be void when there is a failure of consideration, and the parties may be permitted to rescind a contract under those circumstances. The agreements in this case were supported by adequate consideration—that is, much of the work described in the EMI had already been completed at the time the EMI was reduced to writing, and the parties acted in ways contemplated by the EMI and the Nondisclosure Agreement. In fact, Innovation Ventures terminated the EMI by means specified in the EMI.

2. The Court of Appeals erred by applying the standard used to consider the validity of noncompete agreements between an employer and an employee to the noncompete agreements between the parties in this case. Commercial noncompete agreements between businesses should be evaluated under the rule of reason, and federal court interpretations of the rule of reason should be given due deference. The rule of reason considers whether the restraint of trade resulting from a noncompete agreement regulates and possibly promotes competition, or whether the noncompete agreement suppresses or even destroys competition. To properly evaluate a noncompete agreement under the rule of reason, a court should consider factors including specific information about the relevant business involved in the noncompete agreement, that business's condition before and after the restraint was imposed, the restraint's history, the reason it was adopted, its nature, and its effect.

3. There was no genuine issue of material fact on the question whether Krause or K & L Development breached the parties' agreements regarding the confidentiality of information and the prohibition against competition; that is, no evidence existed to support Innovation Ventures' allegations that Krause and K & L Development breached the confidentiality or the noncompete provisions in the EMI. The prohibition against competing with Innovation Ventures involved the design and production of bottling equipment, not the use of the bottling equipment in this case to manufacture a competing energy drink. Although no genuine issue of material fact existed on the question whether Krause or K & L Development breached the confidentiality or noncompete provisions in the EMI, there were insufficient grounds to reach the same conclusion about K & L Development's alleged breach of the Nondisclosure Agreement. Krause was not individually liable for any alleged violation of the Nondisclosure Agreement because he signed the agreement as the managing member of K & L Development.

4. Innovation Ventures abandoned its claim that Liquid Manufacturing's production of Eternal Energy violated the noncompete provision in the Termination Agreement between Innovation Ventures and Liquid Manufacturing. Innovation Ventures failed to present to the Supreme Court any evidence to support its assertion that Liquid Manufacturing breached the noncompete agreement by producing Eternal Energy. However, there is an issue of material fact about whether Liquid Manufacturing's production of energy drinks other than Eternal Energy violated the noncompete provision in the Termination Agreement.

Reversed in part, affirmed in part, and remanded to the trial court to determine whether the noncompete provisions in the Nondisclosure and Termination Agreements are reasonable under the rule of reason.

©2016 State of Michigan

# OPINION

Chief Justice:                Justices:
Robert P. Young, Jr.    Stephen J. Markman
                                   Brian K. Zahra
                                   Bridget M. McCormack
                                   David F. Viviano
                                   Richard H. Bernstein
                                   Joan L. Larsen

FILED July 14, 2016

S T A T E   O F   M I C H I G A N

SUPREME COURT

INNOVATION VENTURES, LLC, formerly
doing business as LIVING ESSENTIALS, a
Michigan Limited Liability Company,

         Plaintiff-Appellant,

v                                    No. 150591

LIQUID MANUFACTURING, LLC, a
Michigan Limited Liability Company, K & L
DEVELOPMENT OF MICHIGAN, LLC, a
Michigan Limited Liability Company, LXR
BIOTECH, LLC, a Michigan Limited
Liability Company, ETERNAL ENERGY,
LLC, a Michigan Limited Liability
Company, ANDREW KRAUSE, an
individual, and PETER PAISLEY, an
individual,

         Defendants-Appellees.

BEFORE THE ENTIRE BENCH

MCCORMACK, J.

In this case, we consider whether agreements between sophisticated businesses are void for failure of consideration and whether the noncompete provisions in these agreements are reasonable. Plaintiff Innovation Ventures, LLC, has alleged a variety of tort and breach of contract claims against defendants Liquid Manufacturing, LLC, K & L Development of Michigan, LLC, Eternal Energy, LLC, LXR Biotech, LLC, Peter Paisley, and Andrew Krause based on the defendants' production of Eternal Energy and other energy drinks.

Contrary to the determination of the Court of Appeals, we conclude that the parties' Equipment Manufacturing and Installation Agreement (EMI) and Nondisclosure Agreement were not void for failure of consideration. We nevertheless affirm the trial court's grant of summary disposition to defendants for the claims against Krause, because there is no genuine issue of material fact on the question whether Krause breached the EMI or the Nondisclosure Agreement. Likewise, there is no genuine issue of material fact on the question whether K & L Development breached the EMI. Because questions of fact remain regarding whether K & L Development breached the Nondisclosure Agreement, however, we vacate the trial court's grant of summary disposition regarding that claim and remand that claim to the trial court for further proceedings consistent with this opinion.

We also hold that a commercial noncompete provision must be evaluated for reasonableness under the rule of reason. We conclude that the Court of Appeals erred when it failed to evaluate under this standard the noncompete provision in the parties' Termination Agreement. We leave undisturbed, however, the Court of Appeals'

2

determination that Liquid Manufacturing did not breach the Termination Agreement by producing Eternal Energy.

Accordingly, we reverse the Court of Appeals in part, affirm in part, and remand to the trial court for consideration of whether the noncompete provisions in the parties' Nondisclosure Agreement and Termination Agreement are reasonable under the rule of reason, whether K & L Development breached the Nondisclosure Agreement, and whether Liquid Manufacturing breached the Termination Agreement with respect to its production of products other than Eternal Energy.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. AGREEMENTS BETWEEN THE PLAINTIFF AND DEFENDANTS K & L DEVELOPMENT AND KRAUSE

In 2007, the plaintiff engaged defendants Andrew Krause and K & L Development of Michigan (K & L Development) to design, manufacture, and install manufacturing and packaging equipment for the production of 5-Hour ENERGY at Liquid Manufacturing's bottling plant.[1] The parties operated under an oral agreement until April 27, 2009, when they memorialized their oral agreement in the written EMI. The EMI recitals referred to the defendants' completed work on the production line installed in Liquid Manufacturing's facility and the plaintiff's desire to engage the defendants in designing, manufacturing, and installing additional manufacturing equipment.[2] The parties' oral

---

[1] Andrew Krause was the managing member of K & L Development. He is a founding member of Eternal Energy, LLC, and LXR Biotech, LLC, and is the president of LXR Biotech, LLC.

[2] While the EMI and the Nondisclosure Agreement described future work, they were signed after the parties had completed nearly all the work contemplated in the EMI,

3

agreement did not include a confidentiality agreement or a noncompete provision; the parties added a confidentiality agreement and a noncompete provision when they memorialized their agreement in writing.[3] As provided in the EMI, the parties were permitted to terminate the agreement at any time without cause with 14 days' written notice.

---

including the second production line.

[3] The EMI defined exceptions to confidential information as follows:

> 9.4 Confidential Information does not include (i) information in the public domain; (ii) information legally acquired from a third party not bound to an obligation of confidentiality; (iii) information legally known to Contractor prior to the date hereof; and (iv) information required to be disclosed pursuant to a valid and enforceable subpoena or court order issued by a court of competent jurisdiction.

The EMI also contained the following noncompete provision:

> 10. Exclusivity. During the term of this Agreement and for a period of five years thereafter, within the United States, Canada, Mexico or the EU, Contractor shall not design, manufacture, produce or participate directly or indirectly in the design or manufacture of any product similar to the Equipment with the same or similar purpose of bottling one to four ounce bottles of liquid energy shots. This exclusivity restriction on Contractor is in addition to any and all other restrictions imposed on Contractor pursuant to the applicable copyright laws of the United States and other provisions contained in this Agreement (e.g., paragraph 9. Non-Disclosure of Confidential Information). The Parties specifically acknowledge and agree that this exclusivity provision was fully negotiated at arm's length, and takes into consideration many factors, the result of which was to create reasonable time and geographic limitations, and to clearly define the scope of this provision. The Parties further agree that the terms and provisions of section 9 above, this section 10 and section 11 below . . . constitute binding stipulations of fact for purposes of Michigan Court Rules, Rule 2.116(A)(1) and/or (2).

On the same day the EMI was memorialized, the plaintiff and defendant K & L Development entered into an agreement titled Nondisclosure and Confidentiality Agreement (Nondisclosure Agreement).[4] Pursuant to the Nondisclosure Agreement, K & L Development agreed not to use or disclose information obtained previously, currently, or prospectively through its business relationship with the plaintiff. K & L Development also agreed to obtain a confidentiality agreement from each of its employees.

Shortly after entering the EMI and the Nondisclosure Agreement, the plaintiff terminated the EMI, which was permitted by the EMI's explicit terms with 14 days' notice.[5] K & L Development subsequently stopped engaging in business in 2010.

### B. AGREEMENTS BETWEEN THE PLAINTIFF AND LIQUID MANUFACTURING

In March 2007, the plaintiff contracted with defendant Liquid Manufacturing, LLC (Liquid Manufacturing), to produce and package 5-hour ENERGY. The parties

---

[4] Andrew Krause signed the Nondisclosure Agreement in his capacity as the managing member of K & L Development. He was not party to the Nondisclosure Agreement in his individual capacity. We leave undisturbed the trial court's finding that Krause was not individually liable under the Nondisclosure Agreement because he was not bound by it.

The plaintiff argues for the first time in this Court that the Nondisclosure Agreement is a modification of the EMI, rather than a separate agreement. We disagree. The plaintiff is correct that in general, "contracts made at [the] same time, between [the] same parties, with reference to [the] same subject matter, are to be construed together." *Savercool v Farwell*, 17 Mich 307, 317 (1868). Despite being signed at the same time, the EMI and the Nondisclosure Agreement were signed by different parties and referred to different subject matter. Moreover, the EMI and the Nondisclosure Agreement each contain integration clauses, limiting the ability of the parties to modify the agreements.

[5] Although the parties dispute when the plaintiff terminated the EMI, there is no dispute that K & L Development and Krause were provided with the requisite 14 days' notice.

5

subsequently amended this agreement, executing an Amended Manufacturing Agreement, which required Liquid Manufacturing to acquire several pieces of production equipment necessary to bottle 5-hour ENERGY. Liquid Manufacturing owned some of the equipment, and the plaintiff owned the remainder of the equipment. The Amended Manufacturing Agreement also provided the plaintiff with an option to purchase the production equipment acquired and owned by Liquid Manufacturing.

In April 2010, the plaintiff terminated the Amended Manufacturing Agreement with Liquid Manufacturing. The plaintiff, as provided by the Agreement, then exercised its option to purchase the production equipment that Liquid Manufacturing had acquired to manufacture 5-hour ENERGY. The parties memorialized the termination of their business relationship and the plaintiff's purchase of Liquid Manufacturing's production equipment in a new agreement titled Agreement to Terminate and Exercise Purchase Option (Termination Agreement).[6] The Termination Agreement contained several nondisclosure and noncompete provisions, and also explicitly granted Liquid Manufacturing permission to manufacture 36 Permitted Products using the equipment. As part of the Termination Agreement, Liquid Manufacturing was required to obtain from each company associated with a Permitted Product a nondisclosure agreement

_____

[6] Defendant Peter Paisley is the President and CEO of Liquid Manufacturing and a founding member of Eternal Energy, LLC, and LXR Biotech, LLC. The Court of Appeals held that Paisley signed the Termination Agreement in his official capacity and was not individually liable under the Agreement. Since the plaintiff has not challenged the Court of Appeals' holding, we do not upset its decision. Paisley is not individually liable because he signed the Agreement in his capacity as a corporate officer. See, e.g., *Wright v Drury Petroleum Corp*, 229 Mich 542, 544-545; 201 NW 484 (1924); *Archbold v Industrial Land Co*, 264 Mich 289, 290-291; 249 NW 858 (1933).

6

stating that the company would not disclose that its product was bottled using the same equipment that had been used to bottle the plaintiff's products. The 36 Permitted Products were identified in the Approved Manufacturer's List, which was appended to the Termination Agreement. The plaintiff's permission to manufacture these products, however, could be revoked if Liquid Manufacturing violated any provision of the Termination Agreement and failed to cure the violation within 30 days.

## C. FORMATION OF ETERNAL ENERGY AND LXR BIOTECH

In September 2010, the defendants, Andrew Krause, former managing member of K & L Development, and Peter Paisley, CEO and President of Liquid Manufacturing, formed Eternal Energy, LLC, to produce the energy shot, Eternal Energy. On September 20, 2010, Liquid Manufacturing sought the plaintiff's permission to add Eternal Energy to the Approved Manufacturer's List. On the following day, the plaintiff provided its permission to add Eternal Energy to the Approved Manufacturer's List. Andrew Krause and Peter Paisley then formed LXR Biotech, LLC, to market and distribute Eternal Energy.

From September 2010 until March 2011, Liquid Manufacturing used the plaintiff's equipment to bottle Eternal Energy.[7] Liquid Manufacturing purchased the equipment back from the plaintiff in March 2011 and continued production of Eternal

---

[7] The Termination Agreement granted Liquid Manufacturing the option to purchase the equipment back from the plaintiff, which it exercised in March 2011. The noncompete provision, which prohibited Liquid Manufacturing from producing non-Permitted Products on the equipment for three years, was not affected by Liquid Manufacturing's purchase of the equipment.

7

Energy. On January 27, 2012, the plaintiff informed Liquid Manufacturing that it had breached the Termination Agreement by producing Eternal Energy and by failing to provide the plaintiff with the necessary nondisclosure agreement from Eternal Energy, LLC, in which it agreed not to disclose that its product was bottled on the same equipment used to bottle 5-hour ENERGY. The plaintiff demanded that Liquid Manufacturing cease disclosing the plaintiff's confidential information and that it provide the plaintiff with the necessary nondisclosure agreement from Eternal Energy, LLC. Liquid Manufacturing provided the nondisclosure agreement from Eternal Energy, LLC, within the Termination Agreement's prescribed 30-day window to cure any breach.

## D. PROCEDURAL HISTORY

On January 27, 2012, the same day that the plaintiff informed Liquid Manufacturing that it had breached the Termination Agreement, the plaintiff instituted the instant action, alleging several tort and breach of contract claims against the defendants. The plaintiff alleged that defendants Liquid Manufacturing, Peter Paisley, K & L Development, and Andrew Krause wrongfully shared and used confidential information and violated their noncompete agreements by manufacturing, marketing, and distributing Eternal Energy and other energy drinks. The plaintiff sought a temporary restraining order to stop Liquid Manufacturing's production of Eternal Energy and sought emergency discovery. The trial court granted the temporary restraining order and the request for emergency discovery, and the court also ordered Liquid Manufacturing to allow the plaintiff to inspect its facility to determine whether it was manufacturing energy shots not approved by the plaintiff or included in the Approved Manufacturer's List. On

8

January 30, 2012, and February 6, 2012, the plaintiff inspected Liquid Manufacturing's facility and discovered evidence that Liquid Manufacturing had produced Eternal Energy as well as a number of unapproved products.[8] The trial court lifted the temporary restraining order after determining that there was no potential for irreparable harm. The plaintiff subsequently filed an amended complaint alleging additional violations based on the defendants' production of additional energy drinks.

The defendants moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). The trial court initially denied the defendants' motion on all claims except the plaintiff's claims against Krause and Paisley of tortious interference. The court also allowed discovery to proceed. After the plaintiff sought additional discovery on third parties, the defendants sought to stay discovery while the trial court ruled on their renewed motions for summary disposition on the remaining claims. The trial court stayed discovery and subsequently granted summary disposition to the defendants on the remaining claims.

Addressing the breach of contract claims against K & L Development and Krause, the trial court held that there was no genuine issue of material fact on the question whether the defendants breached the EMI, because the EMI did not have a noncompete provision preventing direct competition with the plaintiff, and the EMI did not protect information obtained before the EMI was signed. It further held that the Nondisclosure Agreement between the plaintiff and K & L Development failed for lack of consideration.

_____

[8] The plaintiff alleged Liquid Manufacturing was producing E6, Quick Energy, Quencher, 9 Hour Empower, and Perfectly Petite. It is undisputed that these energy drinks were never added to the Approved Manufacturer's List.

9

In the alternative, the trial court held that the noncompete provision in the Nondisclosure Agreement was unenforceable because it was unreasonable.

The trial court further held that there was no genuine issue of material fact on the question whether Liquid Manufacturing breached the Termination Agreement by producing Eternal Energy. It reasoned that the plaintiff had expressly approved Liquid Manufacturing's production of Eternal Energy and that the only breach alleged—failure to provide the plaintiff with the nondisclosure agreement from Eternal Energy—was timely cured when Liquid Manufacturing provided the plaintiff with Eternal Energy's executed nondisclosure agreement.

The trial court also concluded that Liquid Manufacturing did not breach the confidentiality provisions of the Termination Agreement because the plaintiff allowed Liquid Manufacturing to produce 36 different products using the same equipment used to manufacture 5-hour ENERGY, which effectively waived any confidentiality concerning the manufacturing process. The court reasoned that because the plaintiff authorized the alleged disclosure to Eternal Energy, Liquid Manufacturing could not have breached the agreement by providing information to Eternal Energy, LLC, or LXR Biotech, LLC. The trial court also noted that the plaintiff's claim that Liquid Manufacturing breached the confidentiality provisions of the Termination Agreement could not be sustained because the plaintiff failed to take any precautions to prevent Krause and K & L Development, the *designers* of the equipment, from disclosing their knowledge about the bottling equipment placed in Liquid Manufacturing's facilities. Finally, the trial court held that the noncompete provision in the Termination Agreement between the plaintiff and Liquid Manufacturing was unreasonable, and therefore unenforceable, because the plaintiff did

10

not impose the provision to protect a legitimate business interest. The court reasoned that because the only intent of the Termination Agreement was to prevent competition, not to prevent an unfair advantage, the agreement was invalid on its face as an unreasonable restraint of trade.

The Court of Appeals affirmed the trial court's grant of summary disposition to defendants on all of the plaintiff's claims. The panel affirmed the trial court's grant of summary disposition of the breach of contract claims against K & L Development on different grounds. The Court further held that the EMI and the Nondisclosure Agreement were unenforceable for a failure of consideration because the plaintiff terminated the parties' business/employment relationship within two weeks of signing the Agreements and without providing K & L Development and Krause what they were promised under the Agreements.

The Court of Appeals also affirmed the trial court's grant of defendants' motions for summary disposition of the breach of contract claims against Liquid Manufacturing and Paisley. Like the trial court, the Court of Appeals reasoned that there was no genuine issue of material fact on the question whether Liquid Manufacturing breached the Termination Agreement by manufacturing Eternal Energy; the plaintiff expressly approved the bottling of Eternal Energy, and Liquid Manufacturing cured its breach of the Termination Agreement by providing the plaintiff with the executed nondisclosure agreement from Eternal Energy, LLC, within the time specified by the Termination Agreement. The Court also affirmed the trial court's grant of summary disposition to Liquid Manufacturing for its production of any product, reasoning that the noncompete provision in the Termination Agreement was unreasonable, and therefore, unenforceable.

11

The Court of Appeals evaluated the reasonableness of the parties' noncompete provision in the Termination Agreement under the standard governing noncompete provisions between an employer and employee as articulated in *St Clair Medical, PC v Borgiel*, 270 Mich App 260, 265; 715 NW2d 914 (2006), and MCL 445.774a. The Court also held that Liquid Manufacturing did not violate the confidentiality agreement provisions in the Termination Agreement because the plaintiff expressly agreed to allow Liquid Manufacturing to produce 36 Permitted Products on the bottling equipment. Although the trial court had not addressed Paisley's personal liability, the Court of Appeals held that Paisley was not personally liable under the Termination Agreement.

We granted leave to consider two questions: (1) whether the parties' Nondisclosure Agreement and EMI are void due to failure of consideration, and (2) whether the noncompete provisions in the Termination Agreement and the Nondisclosure Agreement are enforceable.[9] *Innovation Ventures, LLC v Liquid Mfg, LLC*, 498 Mich 859 (2015).

## II. ANALYSIS

We review de novo a trial court's grant of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). While the trial court did not state whether it was granting the defendants' motion for summary disposition under MCR

---

[9] The plaintiff did not appeal the portion of the Court of Appeals' decision affirming the trial court's grant of summary disposition to defendants of the plaintiff's claims of tortious interference with contract and business relations, civil conspiracy, statutory/common-law conversion, fraud in the inducement, and declaratory relief, and therefore, we do not address these claims.

2.116(C)(8) or MCR 2.116(C)(10), we treat its grant of summary disposition as under MCR 2.116(C)(10) because it considered information beyond the pleadings. "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. When evaluating a motion for summary disposition under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

We review de novo, as a question of law, the proper interpretation of a contract. *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001). When interpreting a contract, our primary obligation "is to give effect to the parties' intention at the time they entered into the contract." *Miller-Davis Co*, 495 Mich at 174. To do so, we examine "the language of the contract according to its plain and ordinary meaning." *Id*. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written . . . ." *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). Reasonableness of a noncompete agreement is inherently fact-specific, see, e.g., *Woodward v Cadillac Overall Supply Co*, 396 Mich 379, 391; 240 NW2d 710 (1976), but, "[t]he reasonableness of a noncompetition provision is a question of law when the relevant facts are undisputed." *Coates v Bastian Brothers, Inc*, 276 Mich App 498, 506; 741 NW2d

13

539 (2007); see also *Follmer, Rudzewicz & Co, PC v Kosco*, 420 Mich 394, 408; 362 NW2d 676 (1984) ("The courts thus must scrutinize such agreements and enforce them only to the extent they are reasonable.").

## A. CONSIDERATION

We turn first to the Court of Appeals' determination that the EMI and the Nondisclosure Agreement were unenforceable for failure of consideration. "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Michigan v State of Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "To have consideration there must be a bargained-for exchange"; "[t]here must be a benefit on one side, or a detriment suffered, or service done on the other." *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 238-239; 644 NW2d 734 (2002) (quotation marks and citation omitted). Generally, courts do not inquire into the sufficiency of consideration: "[a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Id*. at 239 (quotation marks and citation omitted; alteration in original).

As an initial matter, the trial court did not make any findings about a failure of consideration, but instead held that the EMI and the Nondisclosure Agreement were not supported by valid consideration. We disagree; both the EMI and the Nondisclosure Agreement were supported by sufficient consideration. According to the EMI, Krause and K & L Development were to design, manufacture, and assemble production equipment for the plaintiff to place in Liquid Manufacturing's facility. Once the

14

manufacturing line placed in Liquid Manufacturing's facility was functioning properly, Krause and K & L Development were to install a second line in the plaintiff's Indiana facility according to the specifications outlined by the plaintiff. In exchange, the plaintiff was to pay Krause and K & L Development in installments proportionate to the value of their work. In fact, at the time the parties memorialized their oral agreement in the EMI, much of the work contemplated in the EMI had already been completed by Krause and K & L Development. Similarly, there was sufficient consideration to support the Nondisclosure Agreement between the plaintiff and K & L Development. In exchange for the plaintiff's acknowledgment that K & L Development wished to continue doing business with the plaintiff, K & L Development agreed to the confidentiality and noncompete agreements contained in the Nondisclosure Agreement.

In contrast to a lack of consideration, which relates to the adequacy of consideration at the time of the contract's formation, failure of consideration relates to the parties' performance under the contract. Failure of consideration is "[a] seriously deficient contractual performance that causes a contract's basis or inducement to cease to exist or to become worthless." *Black's Law Dictionary* (10th ed). In general, failure of consideration is an affirmative defense, and the party asserting it bears the burden of proof. See MCR 2.111(F)(3).

While we have had few opportunities to address this doctrine, generally we have recognized a failure of consideration when one party has committed a first, substantial breach of a contract, and sought to maintain an action against the other party for a subsequent failure to perform. See, e.g., *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 573; 127 NW2d 340 (1964); *Kunzie v Nibbelink*, 199 Mich 308, 315-316; 165 NW

15

722 (1917).[10] "[W]hen there is a failure to perform a substantial part of the contract or one of its essential items," the courts have permitted the parties to rescind the contract. *Rosenthal v Triangle Dev Co*, 261 Mich 462, 463; 246 NW 182 (1933). But failure of consideration does not void a contract when the party seeks to void the contract based on an event explicitly anticipated in the contract. See, e.g., *Abbate v Shelden Land Co*, 303 Mich 657, 665-666; 7 NW2d 97 (1942).

We disagree with the Court of Appeals' holding that the EMI and the Nondisclosure Agreement were void for a failure of consideration. The EMI and the Nondisclosure Agreement were not void for a failure of consideration because the parties exercised their rights as plainly contemplated by the contract.[11] To the extent that the EMI and the Nondisclosure Agreement contemplated an ongoing business relationship,

---

[10] For example, in *Sharrar v Wayne Sav Ass'n*, 246 Mich 225; 224 NW 379 (1929), we held that when subscription fees were collected in exchange for the establishment of a local branch, the failure to establish the local branch would constitute a failure of consideration. We noted that when "the establishment of the branch constituted a controlling inducement for the subscription," failure to establish the branch, in breach of the agreement, was a substantial failure of consideration. *Id*. at 229.

Similarly, in *Gottesman v Rheinfrank*, 303 Mich 153; 5 NW2d 701 (1942), we held that when a contractor failed to fulfill a promise to remedy defects in a house constructed by the contractor, the purchaser could rescind the contract for failure of consideration.

[11] In fact, much of the work contemplated in the agreements had already been completed. It is unclear from the record whether the plaintiff paid K & L Development and Krause for their services. But it is ultimately irrelevant to our analysis. Given that K & L Development and Krause already completed a significant amount of the work contemplated in the agreements, any claim that the plaintiff failed to pay would be properly brought as a breach of contract claim, rather than as a failure of consideration defense. See, e.g., Restatement Contracts, 2d, § 235.

16

the EMI also contemplated the termination of the Agreement with 14 days' notice, at any time, without cause. A party seeking to void a contract on the basis of an event anticipated by the contract cannot claim failure of consideration. See *id*. Because the plaintiff acted within the rights explicitly provided by the contract, the defendants may not now claim failure of consideration.[12] Accordingly, we reverse the portion of the Court of Appeals' opinion holding that the EMI and the Nondisclosure Agreement were void for failure of consideration.

## B. RULE OF REASON

We turn next to the Court of Appeals' analysis of the noncompete provision in the parties' Termination Agreement. The plaintiff contends that the Court of Appeals applied the wrong standard to determine whether the noncompete provision was unreasonable. We agree. The Court of Appeals erred by applying the standard

---

[12] The Court of Appeals' reliance on *Adell Broadcasting Corp v Apex Media Sales, Inc*, 269 Mich App 6; 708 NW2d 778 (2005), and several extra-jurisdictional authorities to conclude that terminating a business relationship shortly after entering an agreement resulted in a failure of consideration was erroneous. In *Adell Broadcasting*, the Court of Appeals held that the defendants' breach of contract claim was the appropriate vehicle, not failure of consideration, when the parties' business relationship continued but the plaintiff failed to pay the defendants' outstanding commissions. *Id*. at 14. And the extra-jurisdictional authorities cited by the Court of Appeals are distinguishable because each case involved at-will employment relationships, not contracts between sophisticated business entities as in this case. See, e.g., *Summits 7, Inc v Kelly*, 178 Vt 396, 405; 886 A2d 365 (2005) (holding that continued employment is sufficient consideration to support a restrictive covenant not to compete entered after at-will employment has started); *Brown & Brown, Inc v Mudron*, 379 Ill App 3d 724, 729; 887 NE2d 437 (2008) (holding that a restrictive covenant not to compete will not be enforced against an at-will employee unless the employee has continued employment for a substantial period of time). We decline to address in this case whether failure of consideration applies to at-will employees who sign a noncompete agreement after at-will employment has started.

17

articulated in MCL 445.774a, which is the proper framework to evaluate the reasonableness of noncompete agreements between employees and employers. Instead, the Court should have applied the rule of reason to evaluate the parties' noncompete agreement.

The Michigan Antitrust Reform Act (MARA) governs the contracts at issue in this case. MCL 445.771 *et seq.*[13] MCL 445.772, which governs general agreements, provides that "[a] contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful."[14] This statutory language is interpreted in light of the long tradition of holding "that a contract would not be construed as in restraint of trade unless the restraint was unreasonable." *Staebler-Kempf Oil Co v Mac's Auto Mart, Inc*, 329 Mich 351, 356-357; 45 NW2d 316 (1951), citing *Standard Oil Co of New Jersey v United States*, 221 US 1; 31 S Ct 502; 55 L Ed 619 (1911); *People ex rel Attorney General v Detroit Asphalt Paving Co*, 244 Mich 119; 221 NW 122 (1928).

---

[13] MARA was enacted by 1984 PA 274, effective March 29, 1985, in an effort to create uniformity in antitrust legislation among the states. MARA was patterned after the Uniform State Antitrust Act promulgated by the National Conference of Commissioners on Uniform State Laws in 1973. See MCLA 445.771 *et seq.*, Michigan prefatory note, and MCLS 445.771 *et seq.*, Michigan prefatory note. See also *Compton v Joseph Lepak, DDS, PC*, 154 Mich App 360, 366 n 2; 397 NW2d 311 (1986).

[14] MCL 445.772 is the corollary to § 1 of the Sherman Antitrust Act. See 15 USC 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.").

The only statutory guidance MARA provides for assessing the reasonableness of a noncompete provision is contained in MCL 445.774a. MCL 445.774a sets forth the factors a court must consider to assess whether a noncompete agreement between an employer and an employee is reasonable.[15] MCL 445.774a; see also *Rory v Continental Ins Co*, 473 Mich 457, 475 n 32; 703 NW2d 23 (2005). MCL 445.774a does not address the proper framework for evaluating a noncompete agreement between businesses. The Court of Appeals relied on *St Clair Med*, 270 Mich App 260, and *Coates*, 276 Mich App 498, two cases involving noncompete agreements between employers and their employees, to hold that the noncompete provision in the Termination Agreement in this case should be evaluated under the same factors identified in MCL 445.774a.[16] Neither case, therefore, is instructive here. But while MARA does not address the standard for evaluating a noncompete agreement between two business entities, the statute provides

---

[15] MCL 445.774a provides in relevant part:

> (1) An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

[16] Because the Court of Appeals held that the EMI and the Nondisclosure Agreement were void for failure of consideration, it did not review the trial court's holding that the noncompete provision in the Nondisclosure Agreement was unreasonable, and therefore, unenforceable.

19

general guidance about where courts should look in the absence of specific rules. MCL 445.784(2) instructs courts to look to federal interpretation of comparable statutes:

> It is the intent of the [L]egislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason.

In general, federal courts have assessed noncompete agreements between two commercial entities under the rule of reason.[17] See e.g., *Perceptron, Inc v Sensor Adaptive Machines, Inc*, 221 F3d 913, 919 (CA 6, 2000) ("[t]he legality of noncompetition covenants ancillary to a legitimate transaction must be analyzed under the rule of reason.") (quotation marks and citation omitted); *County Materials Corp v Allan Block Corp*, 502 F3d 730, 735 (CA 7, 2007) (holding that a noncompete agreement between two companies was required to be evaluated under the rule of reason). When applying the rule of reason, a court must "tak[e] into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *State Oil Co v Khan*, 522 US 3, 10; 118 S Ct 275; 139 L Ed 2d 199 (1997). The rule of reason has been articulated as

> whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even

---

[17] Similarly, while this Court has not addressed this question since MARA was enacted, before that time we regularly evaluated commercial noncompete agreements under the rule of reason. See, e.g., *Staebler-Kempf Oil Co*, 329 Mich at 357 (holding that a noncompete provision in a deed to sell a retail gasoline station was reasonable under the rule of reason); *Hubbard v Miller*, 27 Mich 15, 19-20 (1873) (holding that a contract restraining trade should be evaluated under the rule of reason).

destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences. *Bd of Trade of City of Chicago v United States*, 246 US 231, 238; 38 S Ct 242; 62 L Ed 683 (1918).

We conclude that the parties' noncompete agreements should have been evaluated under the rule of reason.[18]

### 1. BREACH OF CONTRACT CLAIMS AGAINST K & L DEVELOPMENT AND KRAUSE

Because we hold that the EMI and the Nondisclosure Agreement were not void for failure of consideration, we must determine whether K & L Development and Krause violated the noncompete and confidentiality provisions in the EMI, whether K & L Development violated the noncompete and confidentiality provisions in the Nondisclosure Agreement, and whether the noncompete provision in the Nondisclosure

---

[18] In *Bristol Window & Door, Inc v Hoogenstyn*, 250 Mich App 478; 650 NW2d 670 (2002), the Court of Appeals held that the rule of reason should be used to evaluate a noncompete agreement between a business and independent contractors. The Court of Appeals properly identified and reasoned that MCL 445.772 codified the rule of reason, despite failing to refer to MCL 445.784(2) or to evaluate whether federal courts applied the rule of reason under comparable statutes. *Id*. at 492, 497-498.

While the Court of Appeals did not evaluate the reasonableness of the noncompete provision in the Nondisclosure Agreement, the trial court held that the noncompete provision was unenforceable. We vacate that holding and remand to the trial court to consider whether the noncompete provisions in the Nondisclosure Agreement and the Termination Agreement were reasonable under the proper standard.

Agreement is a reasonable restraint of trade. We affirm the trial court's grant of summary disposition of the plaintiff's breach of contract claims against Krause without evaluating the reasonableness of the noncompete provision in the EMI because there is no genuine issue of material fact on the question whether Krause breached the confidentiality and nondisclosure provisions contained in the EMI. With respect to the breach of contract claims against K & L Development, we affirm the trial court's grant of summary disposition regarding any alleged breaches of the EMI, but we remand to the trial court the claim that K & L Development breached the Nondisclosure Agreement because we cannot say, as a matter of law, that K & L Development did not breach the Nondisclosure Agreement.

We first address the confidentiality and noncompete provisions in the EMI between the plaintiff and K & L Development and the plaintiff and Krause. The plaintiff alleges that K & L Development and Krause violated the EMI by sharing confidential information with Eternal Energy, LLC, and by producing Eternal Energy. While the Court of Appeals did not address whether K & L Development and Krause breached the parties' agreements, the trial court held that there was no genuine issue of material fact on the question whether Krause breached the EMI. We affirm the trial court's reasoning and hold that the same reasoning applies to K & L Development's liability under the EMI. The EMI defined confidential information as information obtained by the parties after the execution of the EMI. Because the EMI explicitly excluded from its definition of confidential information, any information obtained by K & L Development and Krause *before* the execution of the EMI, K & L Development and Krause may only be liable for violating the EMI with regard to information obtained *after* the execution of the EMI and

22

shared with Eternal Energy, LLC. There is no allegation that Krause or K & L Development obtained confidential information after April 27, 2009, the date the EMI was executed.

Similarly, the noncompete provision in the EMI only prohibited K & L Development and Krause from designing and producing bottling equipment. It did not prohibit the parties from producing a competing energy drink. There is no evidence in the record that K & L Development or Krause designed or produced bottling equipment in violation of the EMI's noncompete provision. Instead, the plaintiff premises its allegations against K & L Development and Krause entirely on their production of Eternal Energy on the equipment that they designed, produced, and installed in Liquid Manufacturing's facility. But using that equipment to produce a competing energy drink did not constitute a violation of the noncompete provision. Accordingly, there is no genuine issue of material fact on the question whether K & L Development and Krause breached either the confidentiality or the noncompete provisions in the EMI.

While defendants argue that they are entitled to a ruling as a matter of law that K & L Development did not breach the Nondisclosure Agreement, there are insufficient grounds for this Court to conclude that no genuine issue of material fact exists on that question.[19] K & L Development allegedly stopped operating in mid-2010, but it is unclear from the record precisely when K & L Development stopped conducting business. The plaintiff has alleged that K & L Development breached the Nondisclosure

---

[19] As noted earlier, Krause only signed the Nondisclosure Agreement in his capacity as a managing member of K & L Development. We do not disturb the trial court's finding that Krause is not individually liable under the Nondisclosure Agreement.

23

Agreement by producing Eternal Energy beginning in September 2010, but it is possible that K & L Development was no longer operating after the formation of Eternal Energy, LLC. If that is the case, K & L Development could not have breached the Nondisclosure Agreement by producing Eternal Energy or by sharing any confidential information with Eternal Energy. Nevertheless, given the lack of complete discovery in this case, we cannot say that no genuine issue of material fact exists on that question, and we remand this matter to the trial court for further proceedings consistent with this opinion.

## 2. BREACH OF CONTRACT CLAIMS AGAINST LIQUID MANUFACTURING

While the Court of Appeals erred by not evaluating the noncompete provision in the Termination Agreement under the rule of reason, it is unnecessary to evaluate whether the noncompete provision is reasonable with respect to Liquid Manufacturing's production of Eternal Energy because the plaintiff has abandoned any claim that Liquid Manufacturing breached the Termination Agreement by producing Eternal Energy. Although the plaintiff made these claims in both the trial court and the Court of Appeals, the plaintiff failed to present to this Court any argument on these breach issues, opting instead to make conclusory statements in its application for leave to appeal and in its briefs to this Court. "It is not sufficient for a party 'simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Wilson v Taylor*, 457 Mich 232, 243; 557 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); *Tyra v Organ Procurement Agency of Michigan*, 498 Mich 68, 88-89; 869 NW2d 213 (2015).

24

The defendants even highlighted the plaintiff's failure to seek leave to appeal on these issues in their response to the plaintiff's application by noting that the plaintiff had abandoned this claim.[20] Despite having an opportunity to rebut this claim in its reply brief, plaintiff remained silent. Irrespective of the merits of the claim, we do not address it because any argument that Liquid Manufacturing breached the Termination Agreement with respect to Eternal Energy has been abandoned. We thus leave undisturbed the Court of Appeals' holding affirming summary disposition of these claims.

There is, however, a genuine issue of material fact regarding whether Liquid Manufacturing breached the Termination Agreement by producing other products. Accordingly, we remand to the trial court the plaintiff's claim that Liquid Manufacturing breached the Termination Agreement with respect to its production of other energy drinks. The trial court should consider whether the noncompete provision in the Termination Agreement is reasonable under the rule of reason, and whether Liquid Manufacturing violated the Termination Agreement by producing energy drinks other than Eternal Energy.[21]

---

[20] In their answer to the plaintiff's application for leave, the defendants argued, "Plaintiff has abandoned all other issues and claims. Thus, the Court of Appeals should be affirmed as to summary disposition of Plaintiff's other claims, including alleged breaches of the confidentiality provisions of the agreements among the parties, tortious interference, conspiracy, unjust enrichment, conversion, and fraud."

[21] The Court of Appeals also held that the plaintiff abandoned any claim that the noncompete provision could be reformed in a manner that would be reasonable. Because we remand to the trial court to determine whether the noncompete provision is reasonable, the plaintiff may raise any claims that the noncompete provision may be reformed in a manner to make it reasonable.

25

## III.  CONCLUSION

We conclude that the parties' EMI and Nondisclosure Agreement were not void for failure of consideration.  The agreements were supported by sufficient consideration and sufficient performance to render them enforceable.  We also conclude that commercial noncompete agreements should be evaluated under the rule of reason.  Because there is no genuine issue of material fact on the question whether defendants Krause and K & L Development breached the EMI, or that defendant Krause breached the Nondisclosure Agreement, we affirm the trial court's grant of summary disposition to the defendants on these claims.  We leave undisturbed the Court of Appeals' holding that defendant Liquid Manufacturing did not breach the Termination Agreement by producing Eternal Energy.

We remand, however, the remaining claims to the trial court to consider whether the noncompete provisions in the parties' Nondisclosure Agreement and Termination Agreement are reasonable under the proper standard, whether K & L Development breached the Nondisclosure Agreement, and whether Liquid Manufacturing violated the Termination Agreement by producing products other than Eternal Energy.

Bridget M. McCormack
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

26