*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY JOHNSON,

Plaintiff-Appellee,

v

GEICO INDEMNITY COMPANY,

Defendant-Appellant.

UNPUBLISHED
May 12, 2022

No. 351838
Wayne Circuit Court
LC No. 18-006423-NF

ON REMAND

Before: JANSEN, P.J., and MURRAY and CAMERON, JJ.

PER CURIAM.

This matter has been remanded to this Court for reconsideration in light of *Meemic Ins Co v Fortson*, 506 Mich 287; 954 NW2d 115 (2020). Previously, this Court reversed the trial court order denying defendant summary disposition, and remanded for entry of an order granting summary disposition in favor of defendant because there was no factual dispute that plaintiff submitted fraudulent claims for attendant care and replacement services. *Johnson v Geico Indemnity Co*, unpublished per curiam opinion of the Court of Appeals, issued March 18, 2021 (Docket No. 351838), pp 5-6, vacated 967 NW2d 616 (2022). Plaintiff moved for reconsideration, which this Court denied, *Johnson v Geico Indemnity Co*, unpublished order of the Court of Appeals, entered May 21, 2021 (Docket No. 351838), and then plaintiff sought leave to appeal in the Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated our prior judgment, and remanded to this Court for reconsideration under *Fortson*, 506 Mich 287. *Johnson v Geico Indemnity Co*, ___ Mich ___; 967 NW2d 616 (2022) (Docket No. 163108).

In short, this case arises from a 2017 automobile accident in which plaintiff sustained injuries, after which she claimed that she could not perform household tasks and personal care. Her former boyfriend, William Stadler, and her son, Jacob Heminger, performed these duties. Plaintiff's minor daughter, KJ, assisted plaintiff with bathing and dressing. Plaintiff submitted a claim for personal injury protection (PIP) to defendant, her automobile insurer at the time of the accident, for replacement services and attendant care. Defendant refused to pay, and plaintiff filed suit. Defendant moved for summary disposition, arguing that plaintiff's insurance policy was void

-1-

under the fraud provision because plaintiff made claims for replacement services and attendant care while plaintiff was in Ohio and Florida without Stadler or Heminger. The trial court denied defendant's motion. Relying primarily on *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), this Court determined on appeal that there was no genuine issue of material fact that plaintiff misrepresented her need for replacement services while she was out of state, and submitted fraudulent claims under her insurance contract. *Johnson*, unpub op at 4-5. Thus, defendant was entitled to summary disposition. *Id*. at 5. This Court reached the same conclusion regarding plaintiff's claims for attendant care while she was out of state without Stadler or Heminger. *Id*. at 5-6.

In reconsidering this case under *Fortson* as directed, we conclude that defendant cannot void the contract entirely, but it is not obligated to pay PIP benefits for claims that are clearly fraudulent. For the reasons discussed herein, the trial court order denying defendant's motion for summary disposition is vacated, and this matter is remanded to the trial court for reconsideration of defendant's motion consistent with this opinion.

In *Fortson*, the Supreme Court held that, with respect to coverage mandated by the no-fault act, a contractual antifraud provision is "only valid and enforceable to the extent it contains statutory defenses or common-law defenses that have not been abrogated." *Fortson*, 506 Mich at 302-303. There is no statutory fraud defense in the no-fault act. *Id*. at 303-304. And, under the common law, a contract may be void because of fraud, but only if the contract is *obtained* by fraud. *Id*. at 304-305. However, *Fortson* also explains:

> This is not to suggest that a contractual provision that rescinds a contract because of postprocurement fraud is invalid in all circumstances. At common law, a contract might also be rescinded because of a party's failure to " 'perform a substantial part of the contract or one of its essential items[.]' " *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 510; 885 NW2d 861 (2016), quoting *Rosenthal v Triangle Dev Co*, 261 Mich 462, 463; 246 NW 182 (1933). Thus, a postprocurement fraud clause that rescinds a contract would be valid as applied to a party's failure to perform a substantial part of the contract or one of its essential terms. Generally, however, the mere breach of a contract would not entitle the injured party to avoid the contract at common law. See *Abbate v Shelden Land Co*, 303 Mich 657, 666; 7 NW2d 97 (1942) ("It is not every partial failure to comply with the terms of a contract by one party which will entitle the other party to abandon the contract at once.") (quotation marks and citations omitted). Rather, "facts which will ordinarily warrant the rescission of a contract must have existed at the time the contract was made." 1 Black, *Rescission of Contracts and Cancellation of Written Instruments* (1916), § 5, p 8. [*Fortson*, 506 Mich at 307-308 (footnotes omitted).]

And, in an earlier footnote, the Court wrote:

> That is not to say that the no-fault act leaves insurers without recourse. *An insurer can reject fraudulent claims without rescinding the entire policy*. See generally *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 655; 899 NW2d 744 (2017). In addition, an insurer may receive attorney fees "in defending against a claim that

was in some respect fraudulent or so excessive as to have no reasonable foundation." MCL 500.3148(2). And, in certain narrow circumstances, an insurer can seek to cancel the policy under MCL 500.3220. For the reasons discussed later in this opinion, however, neither of those statutes is relevant or applicable to this case. [*Fortson*, 506 Mich at 304 n 10 (emphasis added).]

In *Fortson*, the misrepresentations at issue were fraudulent attendant care claims submitted by the claimant's parents, who were also the named insureds on the policy. *Id*. at 309.[1] The insurer sought to use those misrepresentations as a basis to rescind the policy entirely under an antifraud provision. *Id*. at 293-296. The Supreme Court explained that the insurer could not have relied on those misrepresentations when it agreed to insure the Fortsons, and there was "no argument or showing that the misrepresentations in this case constituted a failure to perform a substantial part of the contract or an essential term, such that Meemic could obtain rescission instead of bringing an action for damages. In short, Meemic's contract-based fraud defense fails because it is not the type of common-law fraud that would allow for rescission." *Id*. at 309-310 (footnotes omitted).

Notably, *Fortson* was a situation in which fraud was alleged to have been committed by the policyholders, but the claimant was not a policyholder or one alleged to have committed fraud himself. In a footnote, the Court explained that it was irrelevant that the claimant was a third party to the contract because the "case turns upon the nature of the common-law fraud defense—specifically, that it must relate to the contract's inception . . . ." *Id*. at 309 n 17. Yet in another footnote, the Court stated that "because this case involves fraud by someone other than the claim beneficiary, the Court need not address whether a clause voiding a policy for postprocurement fraud would be valid as applied to fraud by an individual who is *both* a policyholder and the claim beneficiary." *Id*. at 307 n 15.

This specific situation was addressed by this Court in *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574, 576-577; 967 NW2d 869 (2021). In *Williams*, the claimant, who was also the policyholder, was alleged to have made "false statements to defendant after the auto accident regarding her employment, the extent of her injuries, and her need for assistance." *Id*. The policy at issue in *Williams* contained an antifraud provision stating that the policy would be void if the insured intentionally concealed or misrepresented any material fact or circumstance, engaged in fraudulent conduct, or made false statements related to the insurance or to a loss. *Id*. at 577. The provision is distinguishable from the one at issue in the present case, in that the antifraud provision in *Williams* stated that such events would render the entire policy void, *id*.,

---

[1] The claimant was Justin Fortson, who was not a named insured under the policy, but rather an insured person because of his relationship to the named insureds, his parents. *Fortson*, 506 Mich at 293-294. Justin's parents, who provided him 24-hour attendant care after a serious auto accident, billed the insurer for attendant care services purportedly provided while the claimant was "in jail for 233 days and in drug rehabilitation for another 78 days." *Id*. at 294. Thus, much like this case, there was essentially no dispute that misrepresentations were made. But unlike this case, the claimant in *Fortson* was not a policyholder or one alleged to have committed fraud.

whereas in the present case, the antifraud provision states that defendant may "void this policy *or deny coverage*" because of fraud. *Johnson*, unpub op at 3.

In *Williams*, 335 Mich App at 579, this Court explained that under *Fortson*, the Supreme Court "forcefully reiterated its view that a no-fault policy may provide for nonstatutory policy-based exclusions and defenses only as to optional coverages, not mandatory ones such as PIP benefits . . . ." "The Legislature did not include postprocurement misrepresentations among the grounds in MCL 500.3113 on which a court may conclude that the claimant is not entitled to PIP benefits, though it could readily have been included." *Id.* (footnote omitted). And, according to *Williams*, *Fortson* "concluded that under the common law, fraud constituted grounds to void a contract only as to preprocurement fraud[.]" *Id.* at 580. This Court then tackled how *Bahri* and *Fortson* could coexist, and concluded that, after *Fortson*, "*Bahri* remains good law only to the extent that it is consistent with the no-fault act and common law as explained in [*Fortson*]. In other words, it applies only in cases of fraud in the inducement." *Williams*, 335 Mich App at 585. This Court also held that *Fortson* "did not turn on the fact that the claimant was not a party to the contract, but on the holding that antifraud provisions may not be applied to PIP claims, other than fraud in the inducement." *Id.*

The *Williams* Court did address that portion of *Fortson* indicating that an antifraud provision was not invalid in all circumstances:

> [*Fortson*] also allowed that a fraud exclusion may be "valid as applied to a party's failure to perform a substantial part of the contract or one of its essential terms." [*Fortson*], 506 Mich at 308. Here, however, as [*Fortson*] demonstrates, there is no basis to conclude that a PIP policy's fraud provision is an essential term, given that the contract would be binding and fully consistent with the no-fault act without the provision. The terms that are essential to a PIP policy are those defined in the act. "As a general rule, Michigan's no-fault insurance system is a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018) (quotation marks and citations omitted). [*Williams*, 335 Mich App at 585 n 5.]

This Court's final paragraph in *Williams* states:

> [*Fortson*] held that antifraud provisions in no-fault policies apply to fraud in the inducement but not to allegations of postprocurement fraud. Accordingly, the policy provision on which defendant and the trial court relied is "invalid and unenforceable" to the degree a no-fault insurer seeks to apply it to allegations of postprocurement fraud in a claim under mandatory coverage, as in this case. [*Fortson*], 506 Mich at 316. The order of summary disposition is reversed . . . . [*Id.* at 586-587.]

Thus, under this line of cases, the relevant considerations are, generally speaking: (1) whether there is any factual dispute that fraud was committed, (2) when the alleged fraud occurred, in relation to when the policy was procured and when litigation commenced, (3) whether the insurer seeks to avoid paying mandatory benefits or optional ones; (4) whether the policyholder is

also the claimant and individual alleged to have committed fraud, and (5) whether the insurer seeks to rescind the entire policy, or rather, deny a particular claim because of fraud.

In this case, the answers to each of these considerations is clear. There can be no dispute that plaintiff committed fraud by claiming benefits for attendant care and replacement services when she was out of state and away from her named care providers. . The fraud did not induce the insurer to issue the policy, but occurred before suit was filed. Defendant seeks to avoid paying mandatory benefits (PIP benefits) sought in plaintiff's suit. In this case, plaintiff is the claimant, policyholder, and individual alleged to have committed fraud. And finally, defendant does not seek to rescind the entire policy, but rather, to rely on plaintiff's fraudulent conduct to defend against paying those benefits sought in the complaint, which are claims for attendant care and replacement services.

For the most part, all of these considerations lead to the conclusion that the antifraud provision is not applicable. Under *Fortson*, as interpreted by *Williams*, the antifraud provision of the policy is unenforceable, at least with respect to mandatory coverage under the no-fault act, because the fraud at issue is not related to the procurement of the policy. And, the allegations of fraud do not rise to the level described in *Fortson*: fraud related to "a party's failure to perform a substantial part of the contract or one of its essential terms." *Fortson*, 506 Mich at 308. Essentially, where fraud in the nature described in *Fortson* (submitting obviously false claims that 24-hour-a-day attendant care was provided for over 300 days when it was not, *id.* at 293-294) does not allow rescission, then neither does what took place in the present case.

One distinguishing characteristic between the present matter and *Fortson* is the fact that the policyholder, claimant, and person alleged to have committed fraud are one and the same. But according to *Williams*, that is not a relevant consideration; *Fortson* applies all the same. This Court is bound to follow the majority's opinion in *Williams*, as it is a published decision of this Court. MCR 7.215(C)(2) and (J)(1).[2]

Another consideration, however, is the fact that defendant does not seek to rescind the entire policy. Rather, defendant wishes to deny this specific claim because plaintiff made material misrepresentations. *Fortson* recognizes that "[a]n insurer can reject fraudulent claims without rescinding the entire policy." *Fortson*, 506 Mich at 304 n 10. The Court relied on *Shelton*, 318 Mich App at 655, as authority for that premise. *Fortson*, 506 Mich at 304 n 10. In *Shelton*, this Court explained:

> As always, if an insurer concludes that a claim is fraudulent, it may deny the claim. Should the claimant then file suit, the burden is on the claimant to prove that he or she is entitled to his or her claimed benefits, a burden that is highly unlikely to be met if the fact-finder concludes that the claim is fraudulent. And insurers can obtain

---

[2] We decline to convene a conflict panel regarding *Williams*. This Court need not convene a conflict panel in order to follow a Supreme Court decision (here, *Fortson*) when a decision of this Court conflicts with the decision of the Supreme Court. See *Charles A Murray Trust v Futrell*, 303 Mich App 28, 49; 840 NW2d 775 (2013).

attorney fees for having to litigate any claims that are determined to be fraudulent. MCL 500.3148. [*Shelton*, 318 Mich App at 655 (footnotes omitted).]

With that in mind, we believe that *Fortson*'s statement that an insurer can reject fraudulent claims is a recognition that, if a specific claim is clearly fraudulent, the plaintiff will not be able to establish entitlement to benefits under the no-fault act. That is an issue distinct from an antifraud provision. Ultimately, and regardless of any antifraud provision of a policy, a claimant must establish that any PIP benefits sought are actually payable. See MCL 500.3107. In this case, for example, it is clear that plaintiff did not actually incur claimed benefits for attendant care and replacement services while she was out of state and away from her named caregivers. She cannot recover benefits for those claims. But that would not necessarily preclude plaintiff from recovering for attendant care or replacement services that she actually did incur at other times, or for other PIP benefits to which she can prove entitlement.[3] This holding does not conflict with *Williams* or *Fortson*, as the issue ultimately boils down to whether plaintiff can prove those specific claims, not whether the antifraud provision applies.

The order denying defendant's motion for summary disposition is therefore vacated, and this matter is remanded for reconsideration of the motion. Following the *Williams* interpretation of *Fortson*, defendant cannot rescind the policy, and cannot flatly reject any and all claims for attendant care or replacement services. However, defendant is seemingly entitled to summary disposition as to those claims for attendant care and replacement services that are obviously false. It is up to the trial court to make this determination on remand. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron

---

[3] Plaintiff's complaint alleges that she incurred, and defendant failed to pay, "medical expenses, household services, attendant care services, medical mileage, wage loss and other expenses . . . ." Thus, it would appear that more than just the specific, fraudulent claims for attendant care and replacement services are at issue. Plaintiff also claims that due to memory loss caused by the accident, she made "innocent errors" on the claim forms and received attendant care from other individuals while out of state, and that replacement services were still performed by Stadler and Heminger when she was not home.