# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF ERIC JOHNSON, by ANGELA
JOHNSON-JONES, Personal Representative,

Plaintiff-Appellant,

v

JASON CHARLES UGLJESA HASS and
EDWARD NICHOLAS HASS,

Defendants-Appellees.

UNPUBLISHED
October 19, 2017

No. 332855
Oakland Circuit Court
LC No. 2015-145442-NI

---

Before: BORRELLO, P.J., and MURPHY and KRAUSE, JJ.

PER CURIAM.

In this negligence action plaintiff appeals by right an April 28, 2016, trial court order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we affirm.

## I. FACTS

This case arises from an accident that occurred on the evening of February 20, 2014, when defendant Jason Hass hit the decedent Eric Johnson with his vehicle while Johnson was running in all dark clothing near the center of the lane of oncoming traffic on Opdyke Road on a dark rainy night in Pontiac. At approximately 7:15 p.m. on that evening, Eddie Turner was driving a Ford Explorer southbound on Opdyke Road towards Auburn Road. At that portion of Opdyke Road, there are two traffic lanes and another lane for left turns. On that evening, the weather "was like a drizzly rain mix," but the weather did not interfere with Turner's ability to see. Turner stopped at the stoplight at the intersection of Opdyke Road and Auburn Road. He was in the rightmost traffic lane, the lane that was closest to the edge of the road.

Turner testified that he saw a truck in front of him that proceeded through the stoplight, and he observed that the truck "veered off to the left real fast" after it "got probably about fifty yards up the road[.]" Turner thought he saw something, possibly a shadow or an animal, in the road ahead. Turner proceeded through the intersection after the stoplight changed, and as he went further down the road, he approached "what [he] thought was a shadow," but he could "now see that this [was] actually a person that's running in the actual lane, the right lane." Turner was either 50 or 100 yards away when he could decipher that there was a person on the roadway.

-1-

The decedent Johnson was the person running in the road that evening. He was wearing dark clothing without any reflective material on it. Additionally, according to Turner, Johnson was "running straight down the middle" of the right lane. Turner testified that as he reached the "posted speed, about forty-five," he then noticed that Johnson was not "really like getting out of the right lane that [Turner was] driving in." Turner went "ahead and [he] started to get over into the left lane." At that point, Turner looked into his rearview mirror, and he saw that there was another driver, Hass, driving a vehicle behind him. The two vehicles were approximately 50 yards from Johnson, who was still "running in the middle of [the] right lane." The distance between Turner's Ford Explorer and Hass's Chevrolet Impala was approximately "two car lengths apart," however, after Turner moved into the left lane, Hass "only had a car length to -- before he would have been where that pedestrian was." Turner testified that there was no way that Hass could have seen Johnson until Turner moved his vehicle into the left lane.

Hass tried to swerve to avoid Johnson, but he ultimately collided with him. Turner did not see Johnson "make any move to get away" from Hass' automobile. He confirmed that he thought that Johnson would "get out of the lane as traffic approached," however, Johnson continued to "run straight towards the car coming [sic]." He also confirmed that his "lights" were on at that time, and that "there would be no reason for the runner not to see [his] vehicle as [he] approached[.]"

After Hass hit Johnson, Hass went back into the right lane, and Turner stopped his vehicle in "the turning lane." He and Hass exited their vehicles, and Hass headed towards Johnson. Turner asked Hass to "put his flashers on" to alert oncoming traffic to the incident, and Turner used the light on his iPhone to "flag and flash" oncoming traffic. Another motorist, Kim Garrison, stopped her vehicle, and she "left her lights on and turned her flashers on her car, so now [they] actually [had] lights actually flashing onto the young man [that was] laying on the ground that was in the accident." Turner saw that Johnson was wearing "a dark hoodie," "dark sweatpants," "[d]ark shoes," and an article of clothing that Turner described as "like a dark puffy jacket." He stated that Johnson's clothing made it difficult, "if not impossible," to see Johnson until Turner's lights were placed on Johnson.

Turner speculated that if Johnson had "jumped over onto the curb or ran towards the curb, then it could have been avoided, but he ran straight towards the car. He was -- he continued to run straight towards the car." Hass appeared to be "a little shaken," so Turner called 911. He told the 911 operator Johnson was breathing, but that he was "[n]ot really giving us any verbal words." Johnson died four days later at a hospital.

Oakland County Sherriff's Deputy Robert Batzloff composed a report regarding the incident. According to Deputy Batzloff's report, Hass stated that he was driving at approximately 35 to 40 miles per hour when he collided with Johnson. Hass stated that he did not see Johnson. The report listed the time of the incident as 7:14 p.m. Hass was not charged and the incident was closed.

Plaintiff commenced this suit on February 11, 2015, alleging negligence. The complaint alleged that Hass' "careless and reckless" operation of his vehicle resulted in the death of Johnson. Hass' father, Edward, was also named as a defendant under MCL 257.401 because he was the registered owner of the vehicle that Hass was driving.

On February 17, 2016, defendants moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that Johnson was more than 50-percent at fault for the collision because he was "a proximate and sole cause of the accident" due to his violation of MCL 257.655, and because Johnson "was running in all black at night making it impossible for him to be seen by oncoming traffic until it was too late." In their supporting brief, defendants relied on Turner's testimony that Johnson had been wearing dark clothing while he was running towards oncoming traffic in the right southbound lane of Opdyke Road. Defendants also cited Turner's testimony that Johnson did not move to evade oncoming traffic, and that Hass had no time to evade Johnson after Turner went into the left lane. Defendants argued that Johnson's negligence was the proximate cause of his injury and there was no evidence that Hass "failed to drive his vehicle in a prudent manner" resulting in the accident.

Defendants also attached an affidavit signed by Hass to their motion. In the affidavit, Hass stated that he was driving his vehicle at a speed of 35 to 40 miles per hour at the time of incident. He stated that it was "dark outside and it was raining with patches of fog. Visibility was poor." According to Hass, he did not see Johnson because it was dark outside until he "was close to him," and while Hass swerved to the left, he was unable to avoid Johnson because Johnson "was in the middle of the lane of traffic[.]" After the collision, Hass saw that Johnson was "dressed entirely in black clothing with no reflective materials."

Plaintiff responded, arguing that Johnson did not cause the accident and instead argued that Hass was negligent by "tailgating" Turner, resulting in the collision with Johnson. Plaintiff attached an affidavit of a purported expert witness named Sammie Hall. Hall opined that Hass was unable to see Johnson because Hass was traveling too close to Turner's vehicle. Hall based his conclusions on various case reports composed by law enforcement, "the witness statement of this incident offered by Mr. Eddie Turner . . ." Turner's deposition, and Hall's personal examination of the accident site.

Additionally, plaintiff argued that there was a genuine issue of material fact with regard to comparative negligence because even if Johnson was negligent in part due to "jogging in dark clothes in the evening, his negligence did not cause the first car to hit him," nor did it cause Turner "to hit him." Rather, plaintiff asserted that only Hass hit Johnson, and that Turner saw Johnson from "100 yards away."

On April 6, 2016, defendants filed a reply, arguing that the trial court should reject Hall's affidavit as "untimely," and "improper, based wholly on speculation and conjecture and grant their motion [for summary disposition]." Defendants asserted that the period of discovery closed on February 2, 2016, which was the date that a case evaluation was conducted, and therefore, plaintiff failed to provide Hall's affidavit, or identify Hall as an expert witness prior to the close of discovery. Defendants also noted that Hall did not inspect the scene of the incident until after defendants' motion for summary disposition—nearly two years after the accident.

On April 20, 2016, the trial court held a hearing on the motion for summary disposition. Plaintiff's counsel failed to appear. The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). The court explained that Johnson was "running the middle of the lane on a dark rainy evening, wearing all dark clothing," and that Turner testified that he was able to see Johnson from his "high profile SUV, but that the Defendant, Jason Hass's

vehicle was lower, and would not have been able to see [Johnson]." Additionally, the trial court said, "MCL 257.655 states that where there are no sidewalks, pedestrians shall, when practical -- practicable, walk on the left side of the highway facing traffic which passes nearest." The trial court concluded that Johnson "was running the middle of the lane, not on the left side, and his own negligence was the proximate cause of his injures."

The trial court then considered plaintiff's response to defendants' motion, and Hall's accompanying affidavit. It incorrectly observed that "[p]laintiff did not name Mr. Hall, or anyone else as a witness, having failed to file any witness list, or respond to discovery requests," and noted that "[t]he discovery has closed." The trial court then held that Hall's conclusions were "based solely on the police report and witness statements, which are hearsay." Additionally, the trial court stated that, "just on that point of having failed to respond to discovery, the Court is not going to condone a blatant disregard of the orders of this Court and the orderly administration of justice to allow any late filings." The trial court entered an order granting defendants' motion for summary disposition. This appeal ensued.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). The court considered evidence outside the pleadings, therefore, we review the motion as having been granted under MCR 2.116(C)(10). *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 506-507; 885 NW2d 861 (2016). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014). "When evaluating a motion for summary disposition under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Innovation*, 499 Mich at 507 (quotation marks and citations omitted). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citations omitted).

## III. ANALYSIS

Plaintiff argues that the trial court erred in granting summary disposition; plaintiff contends that there was a genuine issue of material fact as to whether Hass' negligent operation of the motion vehicle was the proximate cause of Johnson's death and that there was an issue of fact regarding comparative negligence.

The elements of a prima facie case of negligence are: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

MCL 500.3135 provides, in relevant part:

(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured

person has suffered death, serious impairment of body function, or permanent serious disfigurement.

(2) For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:

\* \* \*

(b) Damages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault.

Normally the question of a plaintiff's comparative negligence is a question for the trier of fact. See *Poch v Anderson*, 229 Mich App 40, 51; 580 NW2d 456 (1998). However, when "no reasonable juror could find that defendant was more at fault than the decedent in the accident," then a plaintiff's comparative negligence may be considered during summary disposition. *Huggins v Scripter*, 469 Mich 898; 669 NW2d 813 (2003).[1]

In this case, no reasonable juror could conclude that Hass breached a duty of care in the operation of his vehicle, or that such breach was the proximate cause of Johnson's injuries, or that Johnson was less than 51-percent responsible for his own injuries.

There was no evidence in the record to support that Hass breached a duty of care while he was operating his vehicle. Turner was the sole witness deposed in this case. He testified that while he was waiting at a stoplight in the right southbound lane of Opdyke Road at the intersection of Auburn Road, he saw a truck that had proceeded past the stoplight veer "off to the left real fast" after it "got probably about fifty yards up the road[.]" This caused Turner to be "more attentive to what was up ahead." Turner saw "something shadow-ish," but he was not sure what was in the road ahead because it was too dark to see.

Turner testified that he was probably 100 yards away when he first saw that there was a person, Johnson, running in the right southbound lane of Opdyke Road; however, Turner also testified that he first realized that Johnson was in the road when he "was probably less than fifty yards away from [Johnson]." Regardless, Turner unequivocally testified that Johnson was "running straight down the middle" of the traffic lane, and that Johnson was wearing "all dark clothing" that lacked reflective materials. At the time, Hass's vehicle was approximately two car lengths behind Turner's Ford Explorer. Turner was driving at the "posted speed" of approximately 45 miles per hour when he noticed that Johnson was not "really like getting out of the right lane that [Turner was] driving in." Thus, Turner went "ahead and [he] started to get over into the left lane."

---

[1] An order of the Michigan Supreme Court is binding precedent on this Court if "it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

According to Turner, after he moved into the left lane, Hass "only had a car length to -- before he would have been where that pedestrian was." Turner believed that Hass was going to hit Johnson at approximately the same time that he noticed Hass "jerk his car over to the left to get into the left lane as well." Turner confirmed that there was no way that Hass could have seen Johnson until Turner moved his vehicle out of the way. Hass had "turned to avoid hitting the runner, but because they had gotten so close, the front right end of his car had made contact with the runner." Turner did not see Johnson "make any move to get away" from Hass's automobile. Ultimately, Hass collided with Johnson. Additionally, Hass asserted in an affidavit that he was driving 35 to 40 miles per hour during the incident, and that he did not see Johnson prior to the collision because it was dark.

On this record, a rational trier of fact could not conclude that Hass breached a duty of care to operate his vehicle in a safe manner. There was no evidence that Hass was driving negligently, and it is undisputed that Hass was unable to see Johnson prior to Turner maneuvering his Ford Explorer into the left lane. Nor was there any evidence that Hass should have foreseen that Johnson would be running in the middle of a lane of traffic on a dark and rainy night while wearing all dark clothing without reflective materials. Additionally, Hass could not have foreseen that Johnson would fail to take evasive action to avoid both Turner's and Hass' oncoming vehicles.

Plaintiff contends that "the police investigation plus the accident reconstruction evidence created an issue of fact." However, in its brief on appeal, plaintiff only relies on the "accident reconstruction evidence"—i.e. Hall's affidavit. Hall's conclusory assertions did not create a genuine issue of material fact. Hall's assertions in his affidavit were based on various case reports composed by law enforcement officers, Turner's "witness statement" to law enforcement, the deposition of Turner, and Hall's personal examination of the accident site, which occurred just over two years after the accident took place. Notably, Hall concluded that Hass's driving "was negligent in that he failed to maintain proper following distance which caused him to carelessly drive in an unsafe manner whereby he struck a pedestrian, Mr. Johnson, who was there to be seen prior to impact."

However, the only explanation Hall provided as to how he reached this conclusion was mathematical suppositions solely based on Turner's testimony that he first saw Johnson from 100 yards away, but Hall completely failed to address Turner's testimony that Turner was less than 50 yards away from Johnson when he first noticed him. Additionally, Hall provided no legal authority in support of his conclusion that Hass violated MCL 257.643, or how he was qualified to make such a determination. In addition to being inadmissible opinion testimony under MRE 702, an affidavit that is devoid of detail and that consists of mere conclusory assertions is insufficient to satisfy the burden of a party opposing summary disposition. See *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996); *Skinner v Square D Co*, 445 Mich 153, 173; 516 NW2d 475 (1994), quoting *Mulholland v DEC Int'l Corp*, 432 Mich 395, 411; 443 NW2d 340 (1989) (explaining that "'there must be facts in evidence to support the opinion testimony of an expert'"). Hall's conclusory opinions in his affidavit were insufficient to establish a genuine issue of material fact with regards to Hass' purported negligence and would have been inadmissible opinion testimony.

Plaintiff also contends that a jury could have properly determined that Hass was at least 50-percent responsible for the collision even when considering Johnson's own negligence. Plaintiff argues that a jury could have found Hass more negligent than Johnson due to Johnson's location "in the curb," and because Johnson's "dark clothing" did not make Johnson "unavoidable" to the other drivers, as Turner saw Johnson from "100 yards away," and "the other driver saw [Johnson] in plenty of time to change lanes." This argument lacks merit. The undisputed testimony in the record established that Johnson was running in all dark clothing into oncoming traffic in the center of the southbound lane of Opdyke Road on a dark rainy February evening. Moreover, while Turner testified that he initially saw Johnson from 100 yards away, he also testified that he first realized that Johnson was in the road when he "was probably less than fifty yards away from [Johnson]." Additionally, Turner testified that Johnson's clothing made it difficult, "if not impossible," to see Johnson until Turner's lights were placed on Johnson. This is not a close question. No reasonable person could conclude that Johnson was less than 51-percent responsible for his injuries. MCL 500.3135(2)(b).

In sum, there was no genuine issue of material fact regarding whether Hass was negligent in the operation of his vehicle or whether Johnson's was more than 50-percent responsible for his own injuries. Accordingly, summary disposition was proper under MCR 2.116(C)(10).[2]

Affirmed. No costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause

---

[2] Given our resolution of this issue, we need not address plaintiff's argument that the trial court erred in dismissing the complaint as a "discovery sanction" for failing to disclose Hall.