*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCHAFER AND WEINER, PLLC,

      Plaintiff-Appellant,

UNPUBLISHED
May 20, 2021

v

DONALD S. DREYFUSS, ELISA DREYFUSS,
AND L&L ASSOCIATES, INC.,

      Defendants,

and

OAKRIDGE MANOR NURSING &
REHABILITATION CENTER, LLC,

      Garnishee Defendant-Appellee.

No. 351122
Oakland Circuit Court
LC No. 2015-145121-CK

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of garnishee defendant, Oakridge Manor Nursing and Rehabilitation Center, LLC, under MCR 2.116(I)(2). We affirm.

## I. BACKGROUND

In 2010, plaintiff agreed to provide legal services to defendants, Donald S. Dreyfuss, Elisa Dreyfuss, and L&L Associates Inc. In exchange, defendants agreed to be liable for "all the fees and expenses" related to plaintiff's services. Pursuant to this agreement, plaintiff performed legal services for defendants, but defendants never paid plaintiff for those services. This case centers on plaintiff's efforts to collect on defendants' debt.

-1-

At the time plaintiff provided services to defendants, they owned a 64-bed nursing home.[1] While defendants' debt to plaintiff was outstanding, they sought to transfer ownership of the home to Oakridge. To operate the 64 beds in the nursing home, defendants had obtained a Certificate of Need (CON) issued by the Michigan Department of Community Health (MDCH).[2] In order for Oakridge to purchase the nursing home and operate its 64 beds, it needed to acquire its own CON from the MDCH.[3] So, in 2012, Oakridge's president—Fahim Uddin—applied for a CON with the MDCH on behalf of Oakridge. In the application, Oakridge proposed to acquire the 64-bed nursing home owned by defendants. According to Uddin, the MDCH informed him that for the CON application to be approved, Oakridge would have to pay an outstanding assessment of $152,840.88 owed by defendants to the state. Pursuant to an escrow agreement with the MDCH, Oakridge paid that assessment on December 27, 2012. Pursuant to the same agreement, the MDCH agreed to forgive a $12,541.59 penalty once Oakridge took ownership of the nursing home. On December 28, 2012, the MDCH approved Oakridge's CON application, and Oakridge subsequently took over operations of the 64-bed nursing home.

After Oakridge's purchase, plaintiff secured judgments against each defendant based on their failure to pay plaintiff for its legal services. In an attempt to collect on its judgment, plaintiff sought garnishment judgments against Oakridge. Plaintiff filed requests and writs for garnishment against Oakridge on December 29, 2016, and, in response, Oakridge filed "Garnishee disclosure" forms denying any garnishee liability.

Pursuant to MCR 3.101(M),[4] plaintiff asked the trial court to decide whether Oakridge had any garnishee liability. Plaintiff contended that Oakridge had garnishee liability to plaintiff because the "transfer" of the CON from defendants to Oakridge was a fraudulent conveyance. Plaintiff alleged that the CON transferred by defendants was valued at "approximately $5,120,000.00." Plaintiff then pointed out that Oakridge only paid money to the MDCH, and "no money and nothing of value was given to" defendants, so, according to plaintiff, Oakridge did not pay reasonably equivalent value for the CON.

---

[1] Though it appears that only Elisa owned the nursing home, this fact is not relevant to the resolution of this appeal. So, for sake of simplicity, this opinion uses "defendants" to discuss the facts pertinent to the ownership and transfer of the nursing home and the relevant assets related to it.

[2] Larry Horvath is (or at least was as of 2010) the manager for the Certificate of Need Evaluation Section with the State of Michigan, and he explained that a CON is a document required by the state to operate "certain types of health facilities" or "clinical services" in Michigan. It gives the facility "the rights" to operate a certain number of beds.

[3] There are many details about the purchase of the nursing home besides the fact that Oakridge needed to acquire a CON, but those details are not relevant to this appeal.

[4] MCR 3.101(M) states, "If there is a dispute regarding the garnishee's liability or if another person claims an interest in the garnishee's property or obligation, the issue shall be tried in the same manner as other civil actions."

On February 26, 2018, Oakridge moved for summary disposition under MCR 2.116(C)(10), contending that defendants received valuable consideration for the CON in the form of Oakridge's payment of defendants' debt to the state, so the CON was no longer defendants' property, and Oakridge was not otherwise liable as a garnishee. The trial court agreed and, on March 29, 2018, entered an opinion and order granting summary disposition to Oakridge. The trial court believed that "the dispositive issue in this case [was] whether the CON was transferred without consideration." The court concluded that the CON was, in fact, transferred for consideration because Oakridge paid the state money on behalf of defendants to cover the outstanding assessment.

On June 25, 2019, this Court reversed in a 3-page, unpublished opinion. This Court noted that, although Oakridge raised various arguments as to why it had no liability to plaintiff, "only one was relied upon by the trial court in granting summary disposition, that of adequate consideration." *Schafer and Weiner, PLLC v Dreyfuss*, unpublished per curiam opinion of the Court of Appeals, issued June 25, 2019 (Docket No. 343371), p 2. This Court concluded that because plaintiff was making a claim for fraudulent conveyance, "the trial court addressed the wrong question"—it addressed "whether there was legally adequate consideration," when it "should have addressed . . . whether there was 'reasonably equivalent value given' " for the CON. *Id*. at 2-3. Accordingly, this Court reversed, expressly permitting Oakridge to raise additional arguments. *Id*. at 3.

Shortly after the case returned to the trial court, plaintiff moved for summary disposition under MCR 2.116(C)(10). In its motion, plaintiff asserted that the CON was transferred for "no consideration," that Oakridge admitted that it "paid nothing" for the CON, and that the CON was worth "approximately $5,120,000.00" when it was transferred. Plaintiff then contended generally that the conveyance of the CON to Oakridge was a fraudulent conveyance because the CON was "a valuable asset" for which defendants were not paid a "reasonably equivalent value."

In response, Oakridge pointed out that plaintiff failed to present any documentary evidence establishing the value of the CON that defendants transferred, and concluded that, without any idea what that CON was worth, plaintiff could not establish a question of fact whether defendants received reasonably equivalent value for it. Oakridge contended that this failure on plaintiff's behalf entitled Oakridge to summary disposition on plaintiff's claim.

In an opinion and order, the trial court again granted summary disposition to Oakridge. The trial court first observed that neither party cited *Nationsbanc Mortg Corp of Georgia v Luptak*, 243 Mich App 560, 567; 625 NW2d 385 (2000), wherein this Court noted that a party seeking to obtain relief in a garnishment proceeding by having a transfer to the garnishee-defendant declared fraudulent "requir[es] a previous judicial determination that the transfer at issue is indeed void." The trial court concluded that the instant case was factually similar to *Nationsbanc*, and because plaintiff never initiated an action to determine "whether the transfer was appropriate," the court could grant summary disposition to Oakridge on that ground alone. But because of the "procedural history of this case," the trial court considered the parties' other arguments.

Addressing those arguments, the trial court "agreed with [Oakridge] that Plaintiff has not met its burden of proof to show that the CON was not transferred for reasonably equivalent value." The trial court reasoned that, despite plaintiff's assertions that Oakridge paid no consideration, the

trial court already determined that Oakridge had paid "some consideration in the form of debt relief" for defendants, and that "finding was left undisturbed by the Court of Appeals," who "only remanded to determine if the consideration was *reasonably equivalent*." Accordingly, the trial court granted summary disposition to Oakridge.

Plaintiff now appeals as of right.

## II. STANDARD OF REVIEW

On appeal, plaintiff argues that the trial court erred by granting summary disposition to Oakridge. We disagree.

Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). Plaintiff moved for summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the review of a motion under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

The trial court denied plaintiff's motion for summary disposition and granted summary disposition to Oakridge under MCR 2.116(I)(2). That rule states, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

## III. ANALYSIS

At issue is whether Oakridge, the garnishee defendant, has any liability to plaintiff. Pursuant to MCR 3.101(M)(1), "If there is a dispute regarding the garnishee's liability . . . the issue shall be tried in the same manner as other civil actions." The plaintiff's "verified statement acts as the plaintiff's complaint against the garnishee, and the [garnishee's] disclosure serves as the answer." MCR 3.101(M)(2). Plaintiff served a verified statement on Oakridge, and Oakridge served its disclosures on plaintiff. Oakridge now contests its liability, so this issue is "tried in the same manner as other civil actions." MCR 3.101(M)(1).

Plaintiff contends that the conveyance of the CON to Oakridge was fraudulent and should be declared void under the Uniform Fraudulent Transfer Act (UFTA), MCL 566.31 *et seq*. It therefore appears that plaintiff is contending that Oakridge is liable as a garnishee under MCR 3.101(G)(1)(h), which provides:

(G) Liability of Garnishee.

(1) Subject to the provisions of the garnishment statute and any setoff permitted by law or these rules, the garnishee is liable for

\* \* \*

(h) all tangible or intangible property of the defendant that, when the writ is served on the garnishee, the garnishee holds by conveyance, transfer, or title that is void as to creditors of the defendant, whether or not the defendant could maintain an action against the garnishee to recover the property[.]

This Court addressed the proper interpretation of MCR 3.101(G)(1)(h) in *Nationsbanc*. Like in this case, the plaintiff in *Nationsbanc* sought to have a transfer from a defendant to a garnishee defendant declared fraudulent, and thus void, in the context of the garnishment proceedings. *Nationsbanc*, 243 Mich App at 562-563. As relevant to this case, the *Nationsbanc* Court held:

MCR 3.101(G)(1)(h) clearly indicates that it applies only to conveyances that are *void* as to creditors at the time the writ is served on the garnishee defendant. Given the legal import attached to the term "void," and crediting the Supreme Court with full knowledge of such significance, we read the court rule as requiring a previous judicial determination that the transfer at issue is indeed void.

\* \* \*

In the instant case, the conveyance from [the defendant] to the [garnishee defendant] had not been declared "void." Accordingly, we conclude that summary disposition was appropriately granted. [*Id*. at 567-568 (footnote omitted).]

The trial court properly observed that the transfer of the CON to Oakridge has not been declared "void" by a previous judicial determination, so Oakridge was technically not a garnishee subject to liability under MCR 3.101(G)(1)(h). Yet the trial court was incorrect in reasoning that summary disposition could "be granted in favor of [Oakridge] on this basis alone." The court overlooked a footnote in *Nationsbanc*, in which this Court stated, "We do believe, however, that if the parties so agreed, adjudication of a fraudulent conveyance claim could be disposed of in garnishment proceedings, assuming proper notice of the issues in controversy." *Nationsbanc*, 243 Mich App at 568 n 3. The parties here seem to have agreed to adjudication of plaintiff's fraudulent conveyance claim in the garnishment proceedings, and while Oakridge took issue with plaintiff's failure to clearly articulate its fraudulent conveyance claim early on, Oakridge does not now contend that it never received proper notice of the issues in controversy. Therefore, *Nationsbanc* does not require this Court to affirm because plaintiff failed to have the conveyance of the CON declared void before attempting to collect from Oakridge.

Turning to the substance of plaintiff's claim, it argues that the conveyance of the CON should be declared fraudulent under MCL 566.35(1), which provides:

A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The parties dispute whether there was a "transfer" in this case because they disagree about whether a CON—a certificate issued by the MDCH—is a transferable asset. This opinion does not decide this issue, and simply assumes for purposes of the following analysis that a CON can be transferred. With that in mind, there appears no dispute that (1) plaintiff's claim arose before the CON was ostensibly "transferred" and (2) defendants were insolvent at the time of the transfer or became insolvent as a result of the transfer. The only remaining dispute is whether defendants received "reasonably equivalent value" in exchange for the CON.[5]

Plaintiff contends that defendants did not receive reasonably equivalent value in exchange for the CON because the evidence establishes that the CON had at least *some* value but defendants received *no* value in exchange for it. This contention is based on a mistaken premise—the evidence unquestionably established that defendants received *some* value in exchange for the CON. To be precise, in exchange for the CON, Oakridge paid $152,840.88 to the state for an outstanding assessment owed by defendants, and the state agreed that if Oakridge paid the assessment, it would forgive a $12,541.59 penalty. Thus, in exchange for the CON, defendants were relieved of approximately $165,000 in debt.

This roughly $165,000 in debt relief constituted "value" to defendants for purposes of the UFTA. MCL 566.33(1) states, "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred *or an antecedent debt is secured or satisfied*." In *Dillard v Schlussel*, 308 Mich App 429, 459; 865 NW2d 648 (2014), this Court recognized in dicta that a debtor who "secure[s] a preexisting debt through" a transfer has received value, and the "reasonably equivalent value" requirement is satisfied if that "preexisting obligation[]" was "reasonably equivalent to the amount transferred[.]" Moreover, the phrase "reasonably equivalent value" was derived from § 548 of the federal Bankruptcy Code, 11 USC 548, which has been construed to include indirect benefits to the debtor from the transfer. See *In re Auto Specialties Mfg, Co*, 153 BR 457, 498 (WD Mich, 1993); see also *In re Image Worldwide, Ltd*, 139 F3d 574, 579 (CA 7, 1998) (explaining that "indirect benefits may be considered as part of the inquiry into

---

[5] The trial court concluded that it need not address whether defendants received "value" in exchange for the CON based on its previous determination that Oakridge paid "consideration" for the CON. "Value" has its own meaning in MCL 566.33(1) of the UFTA, and we question whether a conclusion that one paid "consideration" necessarily means that one paid "value" under the UFTA. We need not address this issue, however, because, for the reasons explained in this opinion, defendants clearly received "value" in exchange for the CON, so any error by the trial court was harmless.

reasonably equivalent value in a transaction"). In sum, Oakridge's satisfying roughly $165,000 in debt owed by defendants constituted "value" for purposes of the UFTA.

Nevertheless, plaintiff contends that it is entitled to summary disposition because Oakridge itself conceded that it paid nothing for the CON, so there can be no question that Oakridge actually paid nothing for the CON. According to plaintiff, in Oakridge's response to plaintiff's interrogatories, it "adamantly states that it paid nothing for the Defendants['] CON." This assertion is blatantly false. In its interrogatory, plaintiff asked:

> Please state with specificity what amounts, if any Garnishee Defendant Oakridge Manor Nursing & Rehab Center, LLC paid to any individual and/or entity to obtain the right to operate a skilled nursing facility using the intangible property rights of Defendant pursuant to a Certificate of Need No. 12·0344, Facility No. 63-4190, which intangible property rights were subsequently relinquished to allow the Garnishment Defendant to operate a skilled nursing facility at the same location using the same intangible assets of Defendant, the Certificate of Need described herein. In responding to this discovery request, please indicate what amount if any was paid in order to induce any individual and/or entity to surrender the rights to operate 64 bed Skilled Nursing Beds at Facility No. 63-4190.

In response, Oakridge stated:

> Oakridge Manor paid $152,840.88 directly to the Michigan Department of Community Health to obtain the required approval for the Certificate of Need that transferred the operating license from Hilton Convalescent Home to Oakridge Manor. No amounts were paid by Oakridge Manor to induce anyone/or entity to relinquish the right to operate the 64 skilled nursing beds at Facility No. 63-4190.

Clearly, Oakridge's statement that "[n]o amounts were paid by Oakridge Manor to induce anyone/or entity" was a direct answer to plaintiff's request that Oakridge "indicate what amount if any was paid in order to induce any individual and/or entity to surrender the rights to" the CON. Moreover, the sentence before that—Oakridge's statement that it paid over $150,000 to the state— is clearly an answer to the first sentence of plaintiff's interrogatory asking Oakridge to state the amounts Oakridge paid to obtain the CON. There is no plausible interpretation of Oakridge's response to plaintiff's interrogatory as Oakridge "adamantly stat[ing] that it paid nothing for the Defendants['] CON."

Having established that defendants received roughly $165,000 in "value" in exchange for the CON, the questions remains whether the $165,000 was "reasonably equivalent" to the CON's value. This determination obviously requires knowing the CON's value. Unfortunately for plaintiff, it failed to produce any evidence establishing the CON's value at the time it was transferred, so there is no basis to conclude that the roughly $165,000 received by defendants did

not constitute "reasonably equivalent value."[6] The trial court therefore properly determined that summary disposition in favor of defendants was warranted. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (explaining that, if a party cannot produce evidence to make out its claim, then summary disposition for the opposing party is appropriate).

In arguing that defendants did not receive reasonably equivalent value in exchange for the CON, plaintiff makes a series of assertions, none of which tend to establish the value of the CON at issue in this case. First, without citation to any evidence, plaintiff contends that CONs "go for as much as $80,000.00 per bed." Obviously, this statement without record support does not establish a question of fact. See *Maiden*, 461 Mich at 121 (explaining that a party creates a question of fact by submitting "substantively admissible evidence").

Second, plaintiff points to a statement by this Court in *Downriver Nursing Assoc v Michigan Dept of Pub Health*, 193 Mich App 594, 599; 484 NW2d 748 (1992), that CONs are "often worth millions of dollars." (Quotation marks and citation omitted.) Assuming that this statement is "evidence" of the value of a CON, it does nothing to establish that value of the CON at issue *in this case*. Any conclusion that the CON in this case was worth millions based on the statement from *Downriver Nursing* would be, at best, speculation or conjecture, which cannot create a question of fact. See *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 288-289; 933 NW2d 732, 740 (2019).

Third, plaintiff points to testimony of Larry Horvath—who, at least as of 2010, was the manager for the Certificate of Need Evaluation Section with the State of Michigan—wherein Hovarth, in a different case concerning CONs, agreed that CONs are often valuable assets. But that a CON is often a valuable asset does not establish that the value of the CON in this case was not reasonably equivalent to $165,000. Moreover, calling an asset "valuable" is vague and otherwise subjective—many people would consider an asset worth $165,000 to be "valuable." Thus, this statement is insufficient to create a question of fact.

Accordingly, despite plaintiff's repeated assertions, there is simply no evidence in the record to support that the roughly $165,000 that defendants received for the CON was not the "reasonably equivalent value" of the CON.

---

[6] Plaintiff asserts that Oakridge "failed to provide any evidence that it paid the reasonably equivalent value of the assets conveyed by the Defendant[s] during their insolvency." This assertion misconstrues the burden of proof. Plaintiff is attempting to void the transaction, so plaintiff has the burden of establishing that the value defendants received for the CON was not "reasonably equivalent" to the CON's value.

## IV.  CONCLUSION

Affirmed.

/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien