*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. CLAYBORN, Minor.

UNPUBLISHED
June 9, 2022

No. 358207
Wayne Circuit Court
Family Division
LC No. 2019-001318-NA

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, KC,[1] under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (parent failed to provide proper care or custody for child), and (j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), sought termination of respondent's parental rights to KC in July 2019. Petitioner asserted that respondent could not properly care for herself or KC because respondent was subject to a guardianship, had multiple mental health issues, and was currently in an adult foster care (AFC) facility. After a preliminary hearing, the trial court authorized the petition and found that petitioner made reasonable efforts to prevent KC's removal, including: scheduling a family team meeting; making collateral contact with medical, mental health, and adult protective services; reviewing respondent's guardianship; investigating relatives with whom KC could stay; completing safety checks on respondent's three other children under guardianship with respondent's sister; and previously offering respondent reunification services. At a combined adjudicative-and-dispositional hearing in December 2019, the trial court exercised jurisdiction over KC, but it found that there were insufficient statutory

---

[1] KC has no legal or putative father. The trial court terminated the rights of her unidentifiable father. Respondent has three additional older children under guardianship of their aunt. Respondent was convicted of two felonious assault counts and imprisoned in 2012. She was released in 2016 and unable to regain custody of the three older children.

grounds to terminate respondent's parental rights. The trial court accordingly ordered petitioner to make reasonable efforts at reunification.

The hearing then turned to the dispositional phase. Jalona Moore, who was KC's foster care worker, testified that respondent had only attended 10 of her 19 scheduled parenting time visits since the petition was authorized: two of the missed visits were due to transportation issues and three of the missed visits were because respondent left the visit before KC even arrived. Moore typically spoke with respondent or respondent's guardian to confirm each visit, and respondent was transported to the visit either by taxi or by someone at her AFC facility. Moore had provided respondent bus tickets to get her to the visits, but it is unclear whether respondent used the tickets. Moore also explained that she constantly had to redirect respondent's care of KC during the supervised visits because respondent had repeatedly failed to retain information about how to safely handle or feed KC. At the end of the hearing, the trial court ordered a Clinic for Child study, a psychological and psychiatric assessment, therapeutic services through The Development Center, and infant mental health treatment, all of which the trial court stated would accommodate respondent's special needs because the programs were specifically tailored to the parent's abilities. The trial court also ordered petitioner to "assist [respondent] with transportation (to visits) which is appropriate to her level of functioning[,] whether that is paying for/arranging a taxi, arranging for [AFC] staff to transport or having [the DHHS] staff transport if it can be done safely."

At the first dispositional review hearing in February 2020, petitioner indicated that respondent had been compliant with mental health treatment and medication, respondent had a legal source of income, and respondent had been "compliant for the most part" with her supervised visits. Moore stated that she would not be opposed to expanding the length of respondent's visits with KC once respondent complied with all of her court-ordered services, but Moore noted that respondent was usually ready to leave after the current two-hour visits. Moore did not believe that respondent would benefit from traditional parenting classes, so she referred respondent for supportive visitation whereby an agency would assist respondent during her visitation and provide one-on-one parenting assistance.

At the second dispositional review hearing in July 2020, petitioner indicated that respondent was not in full compliance with her case service plan and there remained concerns regarding respondent's mental health. Although respondent participated in supportive visitation, the clinician recommended additional supportive visitation because there remained a concern with respondent's safe handling of KC.

At the third dispositional review hearing in October 2020, Moore indicated that respondent had not yet completed a required psychiatric evaluation, and respondent had not been compliant with her mental health services.

In February 2021, petitioner again sought termination of respondent's parental rights because respondent had failed to comply with or benefit from her case service plan.

The termination hearing commenced in April 2021. Respondent testified that the medication for her multiple psychological disorders caused her to sleep a lot: respondent went to sleep around 2:00 a.m. to 4:00 a.m. and woke up around 12:30 p.m. to 1:00 p.m. each day. Respondent alleged that Moore had physically abused KC at the end of respondent's visit in

January 2021, causing respondent to attempt suicide. Respondent then ceased visiting KC because she claimed that petitioner had denied respondent visitation after the incident even though respondent had proper transportation to attend. Moore denied respondent's allegations of abuse, and said that the DHHS investigation could not substantiate the allegations. Moore explained that petitioner never canceled respondent's visitations, and Moore's supervisor called respondent to inform her as such. Moore also called respondent's AFC facility to inquire whether respondent would be attending her visits, but respondent would either still be sleeping or told the AFC staff that she did not want to attend. Consequently, respondent made no contact with KC for the three months leading up to the termination hearing, and she attended only 14 of the 29 offered visits up to that point.

Respondent admitted that she could not currently care for KC on her own, but she contended that it was because she was wrongfully "stuck in the system," and she could care for the child if her medication was switched. Respondent also asserted that transportation was her main barrier to reunification with KC because she was otherwise complying with her case service plan. Moore, on the other hand, explained that respondent had failed to complete a required psychiatric assessment, was inconsistent with her parenting time, unsatisfactorily completed her hands-on parenting class, and failed to attend multiple sessions of the parenting class she was asked to repeat. Moore frequently had to assist respondent with proper care of KC during the supervised visits, and respondent failed to obtain proper housing[2] for herself and KC.

At the end of the hearing, the trial court found that respondent remained unable to care for herself or KC despite petitioner's reasonable efforts at reunification, and the trial court terminated respondent's parental rights to KC under MCL 712A.19b(3)(c)(*i*), (g), and (j). Respondent now appeals.

## II. ANALYSIS

Respondent does not challenge the trial court's determination that statutory grounds[3] existed to terminate her parental rights or that termination was in KC's best interests. Rather, respondent argues the trial court erred by terminating her parental rights because petitioner failed to make the following reasonable efforts to reunify respondent with KC: petitioner failed to offer

---

[2] Moore contacted the Wayne Mental Health Authority to inquire about whether she could assist respondent with housing outside the AFC home. Moore was informed that respondent's level of care was high and severe, and thus the AFC home was the most appropriate for her. Respondent's guardian testified that children cannot live in an AFC home.

[3] In her brief on appeal, respondent states that "clear and convincing evidence warranting termination under [MCL 712A.19b(3)] was not presented," but respondent only argues that termination was inappropriate because petitioner failed to make reasonable efforts at reunification. Respondent does not allege or argue that there were insufficient statutory grounds for termination. To the extent this statement was intended to allege that there were insufficient statutory grounds for termination, respondent abandoned the issue by failing to brief it. See *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) (stating that failure to brief an issue constitutes abandonment).

respondent one-on-one parenting classes, petitioner failed to offer respondent additional visits with KC, petitioner failed to communicate with respondent's doctors to alter respondent's medication schedule, petitioner failed to communicate with respondent after the January 2021 incident, and petitioner failed to transport respondent to her visits with KC. We disagree.

## A. ISSUE PRESERVATION AND STANDARD OF REVIEW

In order to preserve the issue of whether reasonable efforts for reunification were made, a respondent must raise the issue at the time the services are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Respondent did not "object or indicate that the services provided to [her] were somehow inadequate" until she filed this appeal, therefore this issue is unpreserved for appellate review. *Id*.

This court reviews for clear error preserved issues regarding a trial court's reasonable-efforts findings, but it reviews for plain error affecting substantial rights unpreserved issues regarding a trial court's reasonable-efforts findings. *In re Sanborn*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 354915 and 354916); slip op at 1. "To avoid forfeiture under the plain[-]error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted).

## B. PETITIONER MADE REASONABLE EFFORTS AT REUNIFICATION

The trial court properly found that petitioner made reasonable efforts at reunification before terminating respondent's parental rights. The DHHS must generally make reasonable efforts to reunify families before seeking termination of parental rights.[4] *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). As part of its reasonable efforts, the DHHS "must create a service plan outlining the steps both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. The service plan "must include, among other things, a schedule of services to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010), citing MCL 712A.18f(3)(d) (quotation marks and alteration omitted). The DHHS fails to make reasonable efforts at reunification if it does not make "reasonable modifications to the services or programs offered to a disabled parent" pursuant to the Americans with Disabilities Act, 42 USC 12101 *et seq*. *Hicks/Brown*, 500 Mich at 86.

Due to the fact that "there exists a commensurate responsibility on the part of respondents to participate in the services offered," *Frey*, 297 Mich App at 248, the respondent should be given a reasonable time to make changes and benefit from services before the trial court terminates his

---

[4] There are certain enumerated exceptions to this rule involving aggravated circumstances, see MCL 712A.19a(2), none of which apply to this case.

or her parental rights, *Mason*, 486 Mich at 159. Accordingly, the trial court must consider the respondent's compliance with the service plan at any subsequent dispositional review hearings, *id.* at 156, and the trial court may properly terminate the respondent's parental rights where he or she "failed to either participate or demonstrate that they sufficiently benefited from the services . . . specifically targeted to address the primary basis for the adjudication," *Frey*, 297 Mich App at 248. See also *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005) (holding that a trial court did not err by finding that a petitioner made reasonable efforts to preserve a family when it provided supervised visitation with the children, as well as referrals for psychological evaluations and substance-abuse treatment that the respondent did not complete).

"When challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered." *Sanborn*, ___ Mich App at ___; slip op at 4. Respondent argues that her medication schedule caused her to sleep through her scheduled parenting time visits, and she asserts she may have attended more visits if petitioner had altered her medication schedule. To endorse respondent's argument would require much more from petitioner than *reasonable* accommodations for respondent's disability. Respondent has not provided any evidence to suggest that petitioner had any control over when respondent took her medication, and "[i]t is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to . . . search for authority either to sustain or reject [her] position." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 518; 885 NW2d 861 (2016) (quotation marks and citation omitted). Moreover, to the extent anyone had control over when respondent took her medication, it is likely that control was vested in respondent or her guardian— not petitioner, an agency with no apparent affiliation to the AFC facility. As pointed out by KC's lawyer-guardian ad litem, it is likely that respondent could have made a simple request to her psychiatrist to adjust her medication and this may have rectified her sleeping problem, yet there is no indication that respondent made such a request. Notwithstanding respondent's presumably mistaken belief about petitioner's authority, there is ample evidence that petitioner attempted to work with the AFC facility regarding respondent's visits with KC.

As respondent acknowledged in her own brief on appeal, petitioner called the AFC facility to speak with respondent regarding her missed visits in 2021, but petitioner was unable to speak with respondent because she was sleeping. Respondent argues that petitioner could have done more "to have [respondent] woken up at the [AFC facility] to participate in her . . . visits." It is not reasonable to require the DHHS to be responsible for ensuring parents are awake and present at scheduled visitations, especially where that parent is in the care of an AFC facility run independently from the DHHS. "[W]hether disabled or not," it is a parent's responsibility to "demonstrate that she can meet [her children's] basic needs before they will be returned to her care." *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000). Petitioner made multiple attempts to speak with respondent about missing her visitations, but petitioner cannot force a parent to prioritize a child over himself or herself, and respondent's position would deny any self-responsibility on behalf of the parent attempting to demonstrate that they have the capacity to care for a child. See *id.* ("If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the needs of the parent.") (quotation marks and citation omitted).

Respondent also argues that petitioner failed to provide one-on-one parenting classes, but this mischaracterizes the record. Petitioner recognized that respondent would not thrive in a

traditional classroom setting due to her disabilities, and petitioner accordingly referred respondent to one-on-one parenting classes, as well as a supportive visitation program that provided hands-on assistance during respondent's visits with KC. Though respondent initially completed the programs, she had difficulty applying the principles at later visits. Petitioner referred respondent to the parenting program again, but respondent failed to complete it the second time. Thus, petitioner clearly modified respondent's case service plan by providing parenting resources tailored to respondent's specific needs, but respondent failed either to pursue or to benefit from the accommodated resources. Cf. *Hicks/Brown*, 500 Mich at 90 (holding that the petitioner failed to make reasonable efforts at reunification where it failed to provide specific services through a community mental health agency that were tailored to the respondent's intellectual disability).

Respondent next argues that petitioner failed to provide her additional visits with KC, but nothing in the record indicates that respondent requested additional visits. Moreover, petitioner expressly indicated it would not expand respondent's visitation schedule until she completed the requisite trainings and evaluations, which respondent never did. Further, respondent does not explain how she would have benefitted from being offered additional visits when she was already missing the visits that were scheduled. In addition, at the visits respondent did attend, she failed to establish a bond with KC, as the child most often chose the worker for comfort rather than respondent. Respondent also asserts that petitioner ceased communicating with respondent—and denied respondent the ability to visit KC—after the January 2021 incident. This is also contradicted by the record. Petitioner not only assigned respondent an alternative caseworker for the brief period in which respondent and Moore could not have contact after the incident, but petitioner also called respondent's AFC facility to inquire about respondent's absence from her continued visitations after the incident. Petitioner never denied respondent visitation with KC after the incident, nor did petitioner ignore respondent during this time. Rather, respondent consciously chose to forgo her visits with KC to sleep, even after the AFC woke up respondent to ask if she wanted to visit KC. The trial court noted in its termination order that respondent did not visit KC for almost three months prior to trial.

Finally, respondent argues that petitioner did not sufficiently assist in transporting respondent to her scheduled visits. Respondent expressly argues that petitioner should have "go[ne] so far as to have [r]espondent[] picked up from her [AFC facility] and taken to the visits instead of relying on her being transported by her court-appointed guardian." Not only did respondent fail to bring this issue to petitioner's attention before the termination hearing, but it is not unreasonable for petitioner to expect respondent's *legal guardian* to transport respondent to her visits with KC—especially because petitioner confirmed each visit in advance with respondent or her guardian. Moreover, petitioner complied with the trial court's order to assist respondent with transportation resources by providing respondent with free bus tickets, a mode of transportation respondent acknowledged was suitable. It is unclear whether respondent ever used the bus tickets that petitioner provided, but the record demonstrates that respondent's primary modes of transport to her visits were by taxi or by respondent's legal guardian. Though the trial court ordered the DHHS staff to transport respondent if it could be done safely, the record does not indicate whether respondent ever required—or requested—the DHHS staff to transport her. It appears respondent only missed a few visits due to transportation issues in 2019, and respondent did not thereafter raise any concerns with her transportation. Respondent provided no indication

that petitioner refused specific requests for assistance with transportation, nor any indication that respondent had difficulty securing transportation.

## III. CONCLUSION

Petitioner made reasonable efforts at reunification by developing and implementing a case service plan that outlined the steps that respondent should take to rectify the issues that led to court involvement. Petitioner provided respondent with infant mental health services, psychological and psychiatric evaluations, mental-health counseling, a clinical evaluation, one-on-one parenting classes, bus tickets, and specialized supportive visitation. This plan recognized and accommodated respondent's disabilities, but respondent failed to make necessary adjustments in her life to sufficiently participate in or benefit from the targeted services. Consequently, the trial court properly found that petitioner made reasonable efforts at reunification before it terminated respondent's parental rights. See *Sanborn*, ___ Mich App at ___; slip op at 5 (holding that the respondent failed to demonstrate that the DHHS failed to make reasonable accommodations in its case service plan where the respondent did "not provide any substantive argument on how [the numerous] services [the DHHS offered] were deficient or how they were not reasonable or appropriate in light of her [] disability").

Affirmed.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

-7-