*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GALE RADFORD,

       Plaintiff-Appellant,

v

FALLS LAKE NATIONAL INSURANCE
COMPANY,

       Defendant-Appellee,

and

TAYLOR SPRING GOOSEN,

       Defendant.

UNPUBLISHED
September 19, 2024

No. 367605
Muskegon Circuit Court
LC No. 2021-003343-NF

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the default judgment entered against defendant Taylor Spring Goosen. On appeal, plaintiff challenges the trial court's earlier decision to grant defendant Falls Lake National Insurance Company's motion for summary disposition. Falls Lake moved for summary disposition under MCR 2.116(C)(10), arguing that it was entitled to rescind plaintiff's policy with Falls Lake because plaintiff committed fraud in the inducement by misrepresenting the members of her household age 14 or older on her application for insurance. While Falls Lake presented evidence establishing that it would not have issued plaintiff a policy if it knew that she lied on her application for insurance, Falls Lake did not present any evidence establishing that it either would not have issued plaintiff a policy or would have charged plaintiff a higher premium if plaintiff had accurately disclosed the members of her household. Without this evidence, Falls Lake cannot establish that it was injured as a result of its reliance on plaintiff's misrepresentation in her application for insurance. We must therefore reverse the trial court's order granting Falls Lake's motion for summary disposition and remand for further proceedings.

# I. BACKGROUND

Plaintiff submitted an application for no-fault insurance to Falls Lake in November 2018. As relevant to this appeal, the application instructed plaintiff to list on the application "[a]ll household members age 14 or older." Plaintiff listed only herself. Based on the answers plaintiff provided in her application, Falls Lake issued plaintiff a policy of insurance.

It cannot be seriously disputed that plaintiff misrepresented her household members in her application for insurance. Plaintiff testified at her deposition that she had a son born in 2002 who was living with her at the time she submitted her application for insurance. Thus, when plaintiff applied for insurance in November 2018, she failed to list a member of her household who was older than 14 years of age.

On August 14, 2019, plaintiff, while stopped at a stop sign, was rear-ended by defendant Goosen and sustained several injuries as a result of the accident. Plaintiff sought to collect no-fault benefits stemming from this accident from Falls Lake.

On February 19, 2020, Charles Rios, an adjuster working for a third-party administrator handling claims made to Falls Lake, sent plaintiff a letter stating that her policy was "hereby rescinded such that any claim made under it is denied in its entirety." The letter stated that an investigation revealed that plaintiff "did not list all household residents on the policy application," which was "a condition precedent to binding coverage." The letter continued, "As a result of the failure to list [plaintiff's son who was age 14 or older] as a household resident on the policy application, the application would not have been accepted by the carrier and a policy would not have been written without the disclosure of all household residents and an evaluation of the risk." The letter stated that this "constituted a material misrepresentation" that permitted Falls Lake to rescind the policy, which meant "that nobody [was] entitled to first-party no-fault insurance coverage under the . . . policy." Accompanying this letter were checks refunding the policy premiums plaintiff paid under the policy.

Plaintiff endorsed and cashed the checks in March 2020. There is no memo or other writings on the check; simply the amount of the refund, the date the check issued, the relevant account numbers, plaintiff's signature, and a stamp reflecting where the check was deposited.

Rios was deposed during the course of this case. He testified that he was "a claims adjuster, not an underwriter" for a third-party claims administrator to Falls Lake. Rios said that his responsibility in this role was to "[h]andle claims" for no-fault benefits. Rios testified that he did not have the authority to decide whether to pay benefits; that authority rested with the insurance carrier, which in this case was Falls Lake. Rios confirmed that plaintiff's file reflected that a possible policy misrepresentation was identified on September 24, 2019. The following back-and-forth referencing notes in plaintiff's claim file followed:

> *Q.* If you go up to 10/1/2019—I'm sorry, I apologize, 10/4/2019, the subject is the underwriting response, an email that you sent?
>
> *A.* Yes.

*Q*. Do you see that?

*A*. Yes.

*Q*. And here would you read the question that you see on your screen so I make sure we're on the same page, the very first question?

*A*. Would you have written the policy knowing there is a [sic] unlisted household member who is 14 years old that was not disclosed on the policy application?

*Q*. And the adjuster or the underwriter, I apologize, said no?

*A*. Yes.

*Q*. The second question then is asking if there would have been changes in premium. Do you see that?

*A*. Yes.

*Q*. And the answer was need MVR?

*A*. Yes.

*Q*. What is your understanding of MVR, what does that mean?

*A*. Motor vehicle record.

*Q*. Did you ever get an answer to that question?

*A*. No. I don't know if he had a license or not. I don't recall.

*Q*. If you had got an answer to that question, would that be here in your notes . . . ?

*A*. Yes.

*Q*. Is that something you would've—

*A*. It would have been in the file.

*Q*. For sure that's something you would've documented?

*A*. No. It would just be an attachment in the file.

*Q*. Did the underwriter ever explain to you why the policy would not have been written if there was an unlisted member 14 years or older not disclosed?

*A*. No.

Rios testified that Falls Lake ultimately made the decision to rescind plaintiff's policy.

Plaintiff filed the complaint giving rise to this action on August 23, 2021.[1] As relevant to this appeal, plaintiff's complaint alleged that Falls Lake was refusing to pay no-fault benefits it owed to plaintiff pursuant to her policy with Falls Lake. Plaintiff's complaint also alleged a third-party claim against defendant Goosen.

Falls Lake eventually moved for summary disposition on all of plaintiff's claims on grounds that Falls Lake rescinded plaintiff's policy due to plaintiff's fraud in procuring the policy. In support of its argument, Falls Lake principally relied on the fact that, in her application, plaintiff misrepresented the members of her household—the application asked plaintiff to list all members of her household older than age 14, and plaintiff failed to disclose that her son who was older than age 14 was living with her at the time. Falls Lake argued that this constituted a fraudulent misrepresentation that gave Falls Lake the option to rescind the policy because (1) the misrepresentation was material in that, had plaintiff accurately disclosed her household members, Falls Lake would have listed the drivers as either additional or excluded drivers and evaluated the risk it was insuring differently; (2) plaintiff's statement of her household members in her application was clearly false; (3) plaintiff knew who was living in her house and the ages of those individuals, so she clearly knew the information she provided was false; (4) plaintiff submitted her application to Falls Lake with the misrepresentation intending for Falls Lake to act on the application to issue plaintiff an insurance policy; (5) Falls Lake acted in reliance on plaintiff's application when it issued plaintiff a policy at a premium based on the information contained in plaintiff's application; and (6) Falls Lake suffered injury as a result of its reliance because it "issued the policy and incurred the risk without an evaluation of all household residents age 14 or older and an evaluation of the risk." Falls Lake alternatively argued that, because it sent refund checks to plaintiff for her paid policy premiums and plaintiff cashed those checks, plaintiff had "accepted and ratified" Falls Lake's rescission of the policy.

In response, plaintiff argued that Falls Lake had not presented sufficient evidence to establish that plaintiff made a material misrepresentation that injured Falls Lake. In support of this argument, plaintiff noted that Falls Lake did not produce an affidavit establishing "the underwriting factors, that the policy would not have been written, or how much the premium would have increased had [Falls Lake] had the information" about plaintiff's household members before the accident. Plaintiff contended that the testimony of Rios established that Falls Lake never actually determined "what the difference in the policy amount would have been had" plaintiff accurately disclosed the members of her household.

The trial court heard arguments on Falls Lake's dispositive motion on February 18, 2022. While Falls Lake was arguing that plaintiff made a material misrepresentation in her application for insurance, the trial court interrupted to ask what evidence established that plaintiff's misrepresentation was material because the court did not have any evidence to support that Falls Lake would have charged a different premium or would not have issued the policy had plaintiff

---

[1] Plaintiff originally filed an action in federal court, but that case was dismissed, and she had to refile this action in state court.

truthfully disclosed her household members. Falls Lake countered that "we don't need to get to this part of the analysis because there was a mutual rescission," but said that if the court thought it necessary to address, plaintiff's misrepresentation was material because both plaintiff's application for insurance and the February 2020 rescission letter signed by Rios stated that plaintiff's representation of her household members was material.

When it was plaintiff's turn to argue, she emphasized that Falls Lake could not establish that rescission was warranted because it failed to present any evidence that it would not have issued the policy or would have charged a different premium for the policy had plaintiff accurately listed her household members on her application for insurance. Plaintiff additionally emphasized that Rios admitted at his deposition that no one investigated whether Falls Lake would have charged plaintiff a different premium had she disclosed that her son who was older than age 14 was living with her when she applied for insurance.

In response, Falls Lake argued that there was no question of fact that plaintiff's misrepresentation was material because "[t]here's no one to dispute that the policy would not have been written" but for plaintiff's misrepresentation. The court noted that Rios, whose letter Falls Lake was relying on to support that the policy would not have issued but for plaintiff's misrepresentation, testified that he did not know whether that was true. Falls Lake responded, "It's not his job to know." The trial court noted that it was Rios' statement in the rescission letter that Falls Lake was relying on to support that plaintiff's misrepresentation was material, in response to which Falls Lake explained that whether to issue the policy is "an underwriting decision" that Rios is not part of.

The court then allowed the parties the opportunity to finish their arguments, after which it issued a ruling from the bench. The court held that the only factors for fraudulent misrepresentation truly in dispute were (1) whether plaintiff's misrepresentation in her application was material and (2) whether Falls Lake was injured by the misrepresentation. To resolve these disputes, the court first emphasized language in plaintiff's application for insurance that made plain that accurately listing all members of plaintiff's household age 14 or older was a "condition precedent" or "material" to the contract. The court then noted the "rescission letter" from Rios stating that Falls Lake was rescinding the policy because plaintiff's failure to accurately list the members of her household constituted a material misrepresentation. The court lastly noted parts of Rios' testimony that the court interpreted as "Rios saying that the underwriter would not have . . . insured the plaintiff had there been a disclosure of the son who was over 14 who lived in the household." The court held that all of this, taken together, was enough to establish the materiality of plaintiff's misrepresentation, and that Falls Lake either would have charged a higher premium or not issued the policy had plaintiff truthfully divulged the members of her household age 14 or older. The court alternatively reasoned that there was no dispute that plaintiff ratified Falls Lake's rescission of the policy by cashing the premium-refund checks that Falls Lake sent to her. The court concluded that, on these facts, Falls Lake was entitled to rescission.

Plaintiff later filed a motion to enter a default judgment against defendant Goosen, which the trial court granted. This appeal followed.

## II. STANDARD OF REVIEW

Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). Falls Lake moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that plaintiff committed fraud in the inducement and that, as a result, Falls Lake was entitled to rescind the policy. In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the standard for a motion under MCR 2.116(C)(10) as follows:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Whether to grant rescission is a matter within the trial court's discretion. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020). A trial court abuses its discretion if its decision is outside the range of reasonable and principled outcomes. *Id*.

## III. FRAUD IN THE INDUCEMENT

Plaintiff argues that Falls Lake failed to present sufficient evidence to establish that it was entitled to rescind plaintiff's policy on the basis of plaintiff's fraud in procuring the policy.[2] We agree.

---

[2] Plaintiff initially argues that Falls Lake failed to plead fraud with particularity, and that Falls Lake's motion should have been denied on this basis. Plaintiff failed to include this issue in her statement of questions presented, thereby abandoning the issue. See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013) ("A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief . . . ."). That aside, plaintiff's briefing of this issue is cursory; her entire argument is two sentences long, does not cite any caselaw, and the only "authority" cited is a court rule that does not exist. Therefore, even if plaintiff had not abandoned the issue by failing to include it in her statement of questions presented, she abandoned the issue by failing to adequately brief it. *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) ("Failure to adequately brief an issue constitutes abandonment."). While plaintiff elaborated on this issue in her reply brief, a reply brief is limited to rebuttal arguments. MCR 7.212(G). Plaintiff did not properly present the issue for review in her initial brief, and allowing her to cure this deficiency by expounding on the already-abandoned

The trial court rescinded plaintiff's policy with Falls Lake due to plaintiff's fraudulent misrepresentation in her application for insurance. Our Supreme Court has explained that a party moving to rescind a contract on the basis of the nonmoving party's fraudulent misrepresentation must establish that (1) the nonmoving party made a material representation; (2) that representation was false; (3) the nonmoving party knew that the representation was false, or made the representation recklessly without knowledge of its truth; (4) the nonmoving party made the representation intending for the moving party to rely on it; (5) the moving party in fact relied on the representation; and (6) the moving party suffered injury as a result of that reliance. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012).

Elements two through five are not seriously disputed. Taking the elements in order, plaintiff stated in her application for insurance that she was the only member of her household age 14 or older when in fact she had a son living with her who was older than age 14[3]; plaintiff obviously knew that her son was living with her and her son's age; plaintiff intended for Falls Lake to rely on her representation about her household members because she included the information in her application for insurance from Falls Lake; Falls Lake issued plaintiff a policy based on the false information contained in plaintiff's application for insurance.

We agree with plaintiff, however, that Falls Lake failed to present evidence establishing the sixth element—that it suffered an injury as a result of its reliance on plaintiff's misrepresentation in her application for insurance. Plaintiff correctly observes that Falls Lake did not submit any evidence establishing that, had plaintiff disclosed that her son was living with her at the time of her application, Falls Lake would have either not issued the policy or charged plaintiff a higher premium for the policy it issued her.

Rios' deposition testimony as well as the February 2020 rescission letter both state that Falls Lake would not have issued plaintiff a policy if it had known that plaintiff lied about her household members in her application for insurance.[4] But neither source states that Falls Lake

---

argument in a reply brief would be tantamount to allowing plaintiff to raise the issue for the first time in a reply brief, which is improper. *Bronson Methodist Hosp v Michigan Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("[R]aising an issue for the first time in a reply brief is not sufficient to present the issue for appeal.") (Quotation marks and citation omitted.)

[3] Plaintiff confusingly argues on appeal that evidence of her misrepresentation was "not substantively admissible" because it constituted hearsay in violation of the federal rules of evidence. She does not dispute the authenticity of her application (which she signed), and her deposition testimony confirmed that she had a son older than age 14 living with her at the time she submitted her application.

[4] As relevant here, the following exchanged occurred during Rios' deposition:

> *Q.* And here would you read the question that you see on your screen so I make sure we're on the same page, the very first question?

would not have issued the policy to plaintiff, or would have charged plaintiff a higher premium, if plaintiff *had* accurately listed the members of her household in her application for insurance. See *Howard v LM Gen Ins Co*, 345 Mich App 166, 173-174; 5 NW3d 46 (2023) (holding that the insurer failed to establish the "injury" element of its fraud claim because the misrepresentation it identified related to a vehicle not involved in the accident, and "there is no claim . . . that absent coverage on the [vehicle not involved in the accident], plaintiff would not have been covered as to the [vehicle involved in the accident]"). That is, neither source establishes that Falls Lake suffered an injury as a result of its reliance on plaintiff's representation about the members of her household in her application for insurance.[5]

Rios' deposition testimony, moreover, suggests that Falls Lake never actually determined what it would have done had plaintiff disclosed that her son was living with her in her application for insurance. This is reflected in the following exchange at Rios' deposition related to notes in plaintiff's claim file:

> *Q.* The second question then is asking if there would have been changes in premium. Do you see that?
>
> *A.* Yes.
>
> *Q.* And the answer was need MVR?
>
> *A.* Yes.
>
> *Q.* What is your understanding of MVR, what does that mean?
>
> *A.* Motor vehicle record.
>
> *Q.* Did you ever get an answer to that question?

---

> *A.* Would you have written the policy knowing there is a [sic] unlisted household member who is 14 years old that was not disclosed on the policy application?
>
> *Q.* And the adjuster or the underwriter, I apologize, said no?
>
> *A.* Yes.

And the 2020 rescission letter stated in relevant part that "the application would not have been accepted by the carrier and a policy would not have been written without the disclosure of all household residents and an evaluation of the risk."

[5] Falls Lake contends that it "suffered injury because it issued the policy and incurred the risk without an evaluation of all household residents aged 14 or older." But the fact that Falls Lake did not have the opportunity to evaluate a risk did not necessarily injure Falls Lake—if Falls Lake would have issued the same policy to plaintiff at the same rate had plaintiff disclosed the risk, then Falls Lake did not suffer any injury by not having the opportunity to evaluate the risk.

*A*. No. I don't know if he had a license or not. I don't recall.

*Q*. If you had got an answer to that question, would that be here in your notes . . . ?

*A*. Yes.

*Q*. Is that something you would've—

*A*. It would have been in the file.

While this evidence tends to affirmatively establish that Falls Lake never determined whether it would have charged plaintiff a higher premium had she disclosed her son on her application for insurance, no such affirmative evidence was needed to deny Falls Lake's motion for summary disposition. Rather, Falls Lake had to produce evidence tending to show that it was injured as a result of its reliance on plaintiff's representation about the members of her household in her application for insurance. Falls Lake's failure to produce this evidence as the moving party means that summary disposition should not have been granted in its favor.

## IV. MUTUAL RESCISSION

Falls Lake argues that, alternatively, plaintiff's endorsing and cashing the policy-premium-refund checks was tantamount to a ratification and acceptance of Falls Lake's rescission. In support of this argument, Falls Lake principally relies on an unpublished decision from this Court.[6] While this appeal was pending, however, this Court released a published decision that is directly on point and fatal to Falls Lake's argument.

In *Bradley v Westfield Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365828); slip op at 6-9, this Court addressed the same argument on virtually the same fact pattern. In *Bradley*, the insurer argued that the insured had agreed to a mutual rescission by cashing refund checks, relying on the same unpublished opinion from this Court that Falls Lake relies on here. See *id*. at ___; slip op at 8 n 4. To address this argument, the *Bradley* Court explained that a rescission could be unilateral or mutual, and for a mutual rescission to occur, there must be evidence demonstrating mutual intent to rescind the contract. See *id*. at ___; slip op at 6. The Court discussed cases in which this Court had found a mutual rescission after an insured endorsed and cashed premium-refund checks, and explained that, in each case, the effect of cashing the check was plainly conveyed to the insured, such that the insured's act of cashing the check was evidence of the insured's intent to agree to rescind the contract. See *id*. at 7-8. Applying that principle to the case before it, the *Bradley* Court explained:

> In this case, the letter that the refund check accompanied unambiguously conveyed to [the insured] that [the insurer] had unilaterally decided to rescind the policy and that there was nothing [the insured] could do about [it]. Indeed, the

---

[6] *Enriquez v Rios-Carranza*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 2018 (Docket No. 336128).

rescission letter specifically said that "[the insurer] is rescinding the policies issued to you;" it did not say that [the insurer] wanted to rescind the policy and that [the insured] could agree to the rescission by cashing the check. The letter also asserted that [the insurer's] "right to rescind the policy exists under common law" and provided a citation to a Michigan Supreme Court case. The emphasis on its own right to rescind further illustrates that it was informing [the insured] of something that had been done, rather than inviting her to assent to something yet to happen. Finally, the letter quoted portions of the policy that provided [the insurer] the right to void the policy if the insured concealed or misrepresented material facts. The last of these provisions said, "If we void this policy, it shall be void from its inception as if this policy never took place." The quotation of these provisions was clearly an explanation from [the insurer] of its perceived right to unilaterally void the policy. Moreover, nothing in the record suggests that anything written on the check stated any condition of acceptance, let alone mutual rescission of the policy. [*Id*. at ___; slip op at 8-9.]

The facts from *Bradley* are directly analogous to the facts here. The letter Falls Lake sent to plaintiff unambiguously conveyed that Falls Lake was unilaterally rescinding the contract. The February 2020 rescission letter states, "Please accept this correspondence as notice that the applicable policy of insurance is hereby rescinded such that any claim made under it is denied in its entirety." The letter went on to state that plaintiff made a "material misrepresentation" which "permit[ted] Falls Lake to rescind the subject policy of insurance as if it never existed," and Falls Lake supported this assertion with a citation to a Michigan Supreme Court case. Like in *Bradley*, "The [insurer's] emphasis on its own right to rescind further illustrates that it was informing [the insured] of something that had been done, rather than inviting her to assent to something yet to happen." *Id*. at ___; slip op at 9. Also like in *Bradley*, "nothing in the record suggests that anything written on the check stated any condition of acceptance, let alone mutual rescission of the policy." *Id*. at ___; slip op at 9. We accordingly reject Falls Lake's argument that plaintiff agreed to a mutual rescission of her policy with Falls Lake by cashing the premium-refund checks.

Because we conclude there are factual questions as to whether or not Falls Lake would have either declined to issue the policy or charged a higher premium to issue the policy had the true facts been known to it at the time the policy was issued, relief under MCR 2.116(C)(10) should not have been granted. We reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford

-10-